In re Milus G. WALLACE and Wanda H. Wallace, Debtors.

Bankruptcy No. 93–10224–399.

United States Bankruptcy Court, E.D. Missouri, Southeastern Division.

May 5, 1994.

Paul H. Berens, Cape Girardeau, MO, for debtors.

William H. Frye, Cape Girardeau, MO, Standing Chapter 12 Trustee.

*MEMORANDUM OPINION AND ORDER*

BARRY S. SCHERMER, Bankruptcy Judge.

**INTRODUCTION**

This case involves a dispute between the Debtors and the United States Trustee concerning the appropriate calculation of trustee fees under 28 U.S.C. 586(e)(1).

**JURISDICTION**

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF FACTS**

This case began when Milus and Wanda Wallace, ("Debtors"), filed a petition under

Chapter 12 of the Bankruptcy Code. 11 U.S.C. § 101–§ 1330. William H. Frye ("Chapter 12 Trustee") was appointed trustee in this case pursuant to 11 U.S.C. § 1202. The United States Trustee, ("UST"), acting for the interests of its appointee, the Chapter 12 Trustee, filed this Motion concerning the appropriate statutory compensation to be paid to the Chapter 12 Trustee.

Chapter 12 of the Bankruptcy Code concerns the adjustment of debts of a family farmer with regular income. This Chapter is very similar to Chapter 13 in that each involves the partial (or even full) repayment of debts over a period of several years. Payments are made under a plan which essentially categorizes the various debts, prioritizes the debts as mandated by the Bankruptcy Code and then applies plan payments based on the priority of the debt.

A standing Chapter 12 trustee, ("trustee"), or, if none is appointed, the U.S. Trustee, acts as a conduit between a debtor's plan payments and the creditors who will be paid under the plan. In this case, the Debtors are obligated to make plan payments to the Chapter 12 Trustee for three years. The Chapter 12 Trustee will divide the Debtors' payments into separate, likely smaller, payments and send them to the creditors as they are listed in the plan. The trustee performs this "channelling of payments" function for a fee that is determined by 28 U.S.C. § 586(e). It is this section which is the subject matter of this dispute.

### DISCUSSION

This is an issue which is unsettled in bankruptcy courts despite the unequivocal language of the statute. Some courts choose to avoid the issue altogether and defer to the U.S. Trustee, as they are the executive agency entrusted with administering the statute. Other courts look at similar language in a Chapter 13 context and favor the Debtors' interpretation as that is the interpretation which is consistent with the Bankruptcy Code as a whole.

*I. 28 U.S.C. § 586(e)(1) and the Two Opposing Interpretations.*

The Debtors and the UST agree that 28 U.S.C. § 586(e) is the appropriate statutory provision concerning compensation for the Chapter 12 Trustee. Specifically, it is § 586(e)(1)(B)(ii)(I) which controls the Chapter 12 Trustee's compensation in this case. It provides:

> The Attorney General … shall fix—(B) a percentage fee not to exceed—(ii) in the case of a debtor who is a family farmer, the sum of—(I) *not to exceed ten percent of the payments made under the plan of such debtor …*

28 U.S.C. § 586(e)(1)(B)(ii)(I) (emphasis added).

The conflicting interpretations of this language is best highlighted by way of two examples:

Farmer ("Farmer") a debtor under Chapter 12 proposes in his plan to pay Bank, a creditor in the bankruptcy, $100 in a lump sum. In order to assure that Bank receives $100, Farmer must actually pay more than $100 to the trustee because of his 10% fee imposed by § 586(e)(1). Under the Debtors' reading of the statute, Farmer should pay $110 to the trustee with $100 representing the payment from the trustee to the Bank *i.e.* the "payments made under the plan" contemplated by § 586(e)(1)(B)(ii)(I) and $10 being the 10% (of $100) trustee fee on the payments made under the plan.

The UST bases the 10% fee on the *monies received by the trustee* regardless of whether they were intended to be distributed to creditors under the plan or if they were intended to be the trustee's 10% commission. Under the UST's position, the Farmer must pay $111.11 to the trustee to insure a $100 payment to Bank (a 10% trustee fee on $111.11 is $11.11 with a remainder of $100 for Bank). If the Farmer pays $110 to the trustee, with $100 intended for the Bank under the plan and $10 for the 10% commission, under the trustee's theory of entitlement to 10% of monies received, he would then assess a 10% fee against that $10 (*i.e.* $1). Once the trustee obtains this additional $1, another 10% fee would be charged (*i.e.* 10 cents). Again, when Farmer transfers the 10 cents, the trustee would charge a 10% fee (*i.e.* 1 cent). Thus it would cost the Farmer $111.11 to ensure that Bank receives its promised $100.

The UST's calculation amounts to multiple 10% fees upon 10% fees.

## II. The Statute is Unequivocal.

The statute in question in this case is clear and this is apparent both in its language standing alone as well as when reading it in conjunction with other provisions in § 586.

The contested language in § 586(e)(1) is "ten percent of the *payments made under the plan* of such debtor." § 586(e)(1)(B)(ii)(I) (emphasis added). A Chapter 12 plan is filed with the court and the trustee. Once a debtor makes a payment to the trustee, it is the trustee's duty to pay the creditors according to the plan. As is made clear by § 586(e)(1)(B)(ii)(I), a "payment under the plan," is a payment by the trustee to the creditors. Thus, in this case, the proper calculation of the Chapter 12 Trustee's fee is based on a percentage of the *payments made by the Chapter 12 Trustee to the creditors* as they are listed in Debtors' plan.

■ The UST asserts that the language "payments made under the plan" in § 586(e)(1) means payments from the Debtors to the Chapter 12 Trustee. This reading is facially incorrect as it is the Chapter 12 Trustee who will be accepting the funds from the Debtors and then making the payments to creditors under the plan. That Congress intended § 586(e)(1)(B)(ii)(I) to be read in this fashion is also evident by examining the language in § 586(e)(2). " '[T]he court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991) *quoting K Mart v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988).

Section 586(e)(2) acts in conjunction with § 586(e)(1) and it is designed to proscribe the source from which the trustee should collect the 10% fee. This is necessary because there are often several sources of funds from which the trustee could collect his fee. In this case, for example, payments on the Debtors' residence are made by the Debtors directly to the lien holder and the Chapter 12 Trustee is not involved. To eliminate any confusion as to the source of funds from which the trustee should collect his fee, § 586(e)(2) states: "Such [trustee] shall collect such percentage fee from all *payments received* by such [trustee] under plans in the case under chapter 12 ..." (emphasis added).

Thus Congress clearly intended that the Chapter 12 Trustee *earn* its fee (under § 586(e)(1)) from payments *made to creditors,* and *collect* this fee (under § 586(e)(2)) from all the *payments received* by the Chapter 12 Trustee. Certainly if Congress had intended that § 586(e)(1)'s 10% fee be calculated from the payments received by the trustee, as the UST argues, it would have used the same words as in § 586(e)(2). That Congress chose to make this distinction within these two companion sub-sections indicates that the Debtors' reading of § 586(e)(1)(B)(ii)(I) is correct.

## III. This is Not an Issue in Which This Court Should Defer to the Executive Agency Entrusted to Administer the Statute.

■ The UST argues that its interpretation of the statute in question should be upheld merely because it is the agency entrusted to administer that statute. Under the principles stated in the Supreme Court's decision in *Chevron USA Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), such deference may be due an administering agency in specific circumstances, but those circumstances are not met in this Case.

In *Chevron* the Supreme Court articulated a standard under which a court may defer to an executive agency on matters of statutory construction. Justice Stevens, delivering the opinion of the Court, stated:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at

issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–2782.

A recent decision by the 10th Circuit Court of Appeals, *In re BDT Farms*, 21 F.3d 1019 (10th Cir.1994), applied *Chevron* to the exact same issue involved in this case and upheld the interpretation favored by the UST. This Court declines to follow *BDT Farms* because it finds § 586(e)(1) unambiguous and it finds the UST's construction of the statute impermissible.

### a. *Ambiguity*

The UST's argument that this Court should follow *Chevron* fails the first hurdle of the Supreme Court's instruction. As noted above, § 586(e)(1) is not ambiguous, particularly in light of the language in § 586(e)(2).

While this Court agrees with the Circuit Court in *BDT Farms*, that the legislative history is sparse, 21 F.3d at 1022–23, statements on the Congressional Record are no substitute for the plain language of the statute itself. Here, once the function of the trustee is fully articulated and understood, there can be no question, but that § 586(e)(1) was intended to calculate the trustee fees based on the payments made by the trustee to the creditors.

### b. *Impermissible Construction*

The position of the UST also fails the second prong of the *Chevron* analysis in that deference should only be accorded if the administering agency's interpretation if permissible. That is not the situation in this case because the UST's interpretation violates the 10% cap on fees established by § 586(e)(1).

Under the UST's reasoning, a $100 payments to a creditor amounts to a trustee fee of $11.11 because a 10% fee is charged on all payments from the debtor to the trustee including the original trustee fee. Section 586 sets out that the percentage fee for Chapter 12 cases shall not "exceed ten percent of the payments made under the plan of such debtor." § 586(e)(1)(B)(ii)(I). The UST's position results in a percentage fee amounting to 11.11%, clearly above the maximum allowable percentage set out in the statute. Because the UST's interpretation is not permissible under the statute, it fails to meet two requirements for deference in the *Chevron* case.

Furthermore, the UST's reading of § 586(e)(1) is impermissible because it runs contrary to the Bankruptcy Code's enumeration of the duties of a trustee. Section 1202(b) of Title 11 lists the duties for which a trustee is responsible. Some of these duties include: accounting for all property received, § 704(2); examining the claims made by creditors and making necessary objections, § 704(5); and, if advisable, opposing the discharge of the debtor, § 704(6).

In this case, the UST is attempting to seek reimbursement for nothing more than processing its own fee. Certainly the UST's construction is impermissible given § 586(e)(1)'s goal of providing a fair method of compensation and reimbursement for those individuals who perform the duties of trustee. When a trustee reviews claims and sends out payments to creditors as they are listed in the plan, it is performing a duty which merits renumeration. However, by charging a 10% fee for merely receiving its paycheck, the trustee is performing a function which has no benefit to the estate. Thus the manner of compensation advocated by the UST is an impermissible construction because it both violates the 10% cap and bears no relationship with the other compensable duties of a trustee.

### V. This Court Will Follow Those Courts Which Have Interpreted 28 U.S.C. § 586(e)(1) in the Chapter 13 Context.

Chapter 12 is similar to Chapter 13 both in the concept of a plan which is intended to dictate the payments to creditors and in the role of the trustee. *In re Kerwin*, 996 F.2d 552, 559 (2nd Cir.1993) ("Congress based chapter 12 on chapter 13 in order to provide

a bankruptcy process for family farmers similar to that available under chapter 13"); *see also* H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5246, 5249 ("This new chapter is closely modeled after existing Chapter 13."). Given these similarities, this Court will not ignore language in Chapter 13 which seems to interpret the disputed language in § 586(e)(1).

In searching for assistance in defining the words "payments made under the plan" as they are used in § 586(e)(1), at least one district court, looking at this issue in a Chapter 13 case, has relied on the language of 11 U.S.C. § 1326. In *In re Edge*, 122 B.R. 219, 221 (D.Vt.1990), the district court noted that § 1326(a)(2) directs that " '[a] payment made [to the Chapter 13 trustee] shall be retained by the trustee until confirmation or denial of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan.' " Furthermore, under § 1326(b)(1): "[b]efore or at the time of each *payment to creditors under the plan,* there shall be paid ... the percentage fee fixed for such standing trustee." (emphasis added).

This distinction between the fee paid to the Chapter 13 trustee and the payments under the plan, indicates that similar language used § 586(e)(1) should be read with this same distinction. *Edge* at 222. Thus "payments under the plan" in § 586(e)(1) should apply to that percentage of money distributed to creditors by the trustee and should not include any payments made to the trustee for his 10% fee. To give § 586(e)(1) any other reading would be to ignore the distinction made in 11 U.S.C. § 1326.

## CONCLUSION

For the foregoing reasons it is

ORDERED that the United States Trustee's Motion to Compel Debtors to Pay Appropriate Fees is DENIED.