45 F.3d 113
 63 USLW 2445, 32 Collier Bankr.Cas.2d 1415,
26 Bankr.Ct.Dec. 791, Bankr. L. Rep. P 76,339
 In re Bill Brandon BEARD and Peggy Jane Beard, Debtors.
M. Scott MICHEL, United States Trustee for Region 9, Appellant,
v.
Bill Brandon BEARD and Peggy Jane Beard, Debtors-Appellees.
 No. 93-3596.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 29, 1994.
Decided Jan. 18, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied April
12, 1995.
 
 Paul W. Bridenhagen, Office for U.S. Trustees, Bruce G. Forrest (briefed), Civ. Div., Appellate Staff, Sushma Soni (argued), U.S. Dept. of Justice, Civ. Div., Washington, DC, for plaintiff-appellant.
 Charles W. Ewing (argued and briefed), Hilliard, OH, for defendants-appellees.
 Jeffrey Mark Kellner, Worthington, OH, Bruce G. Forrest, U.S. Dept. of Justice, Washington, DC, for Frank Pees, Chapter 12 Trustee for Southern Dist. of Ohio, Eastern Div., amicus curiae.
 Before: KENNEDY and BOGGS, Circuit Judges; and HILLMAN, District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 This appeal stems from a Chapter 12 family-farm bankruptcy and reorganization. The district court, in confirming the plan, affirmed the bankruptcy court's decision to permit the debtors to remit payments directly to an undersecured creditor, without having to transfer the funds to that creditor through the bankruptcy trustee. The two lower courts recognized that, by granting the debtors the right to make these direct remittances and thus to bypass the standing trustee, the debtors would thereby avoid having to pay certain statutory fees that the standing trustee would normally receive in the course of administering the Chapter 12 bankruptcy estate. The trustee appeals. Because we hold that payments made on the secured portion of an undersecured debt are equivalent to payments made on a fully secured debt, we affirm.
 
 
 2
 * In every Chapter 12 bankruptcy case,[1] a trustee is appointed pursuant to 28 U.S.C. Sec. 586; see also 11 U.S.C. Sec. 1202(a). Here, M. Scott Michel, the United States trustee for Region 9, appointed Frank M. Pees to serve as the "standing trustee" for the implementation of Bill and Peggy Beard's Chapter 12 bankruptcy reorganization.[2] The standing trustee's role in a family-farm reorganization, such as the Beards' undertaking here, primarily involves collecting the debtors' postpetition income and making proper payments, in accordance with the plan, to the waiting creditors. 11 U.S.C. Secs. 1222(a)(1), 1226(a); see also Robert L. Jordan & William D. Warren, Bankruptcy 28 (2d ed.1989). Consequently, the trustee in a Chapter 12 bankruptcy plays a much less active role than does the trustee in a Chapter 7 personal-liquidation bankruptcy. See, e.g., Jordan & Warren, ibid. Still, the Chapter 12 standing trustee's role may be significant, in that the statute allows the bankruptcy court, after confirming the debtor's reorganization plan, to order all parties who will be furnishing the Chapter 12 debtor with postpetition income to forward their payments directly to the trustee rather than to the debtor. In that way, the trustee may efficiently process the postpetition payments to the creditors. 11 U.S.C. Sec. 1225(c).
 
 
 3
 Besides handling the debtor's funds and assuring the smooth processing and repayment of the debtor's outstanding obligations, a Chapter 12 trustee typically has additional responsibilities during the course of administering the reorganization plan. Id. Sec. 1202(b); see also id. Secs. 704(2),(3),(5),(6),(7),(9); 1106(a). Among these various duties, he must participate actively in any subsequent hearing that concerns the valuation of debtor property that is subject to a lien, id. Sec. 1202(b)(3)(A), or that concerns the modification of the debtor's confirmed reorganization plan, id. Sec. 1202(b)(3)(C). He must be prepared, if so requested by the court, to investigate the debtor's activities and business. Id. Secs. 1202(b)(2); 1106(a)(3),(4). He must prepare a documented written report and account of his administration of the case. Id. Secs. 1202(b)(1); 704(9).
 
 
 4
 For his various activities on behalf of the reorganized estate, the trustee is paid a fee by the estate. That fee is set by the Attorney General for each trustee subject to a statutory limit that permits the trustee to receive up to ten percent of the first $450,000 in aggregate payments that the debtor transfers through the trustee to creditors under the reorganization plan's terms. Thereafter, the trustee may receive no more than three percent of all additional debtor-to-creditor payments that are made through him, after the aggregate amount of payments transferred under the plan exceeds $450,000. 28 U.S.C. Sec. 586(e)(1)(B)(ii). In this case, the district court decided that the trustee's availability to transfer the debtors' payments to one secured creditor, and to the secured portion of an undersecured creditor's claim, would be unnecessary for the estate's successful reorganization, and therefore would be a service not worth reimbursing. In allowing the debtors to make their payments to those two creditors directly, without having to go through the trustee, the court spared the reorganizing "family farm" the need to pay trustee's fees for such services. Because the debtors were permitted to bypass the trustee when making payments on the approximately $90,000 secured portion of the undersecured claim, the standing trustee lost the opportunity to receive as much as $9,000 in fees over the course of the reorganization period.
 
 
 5
 The United States trustee has appealed the decision of the two lower courts. He contends that the fees that Chapter 12 debtors must pay to a standing trustee represent more than a mere middleman's commission for passing along payments in reorganization. Rather, he contends, the fee schedule serves a Congressional purpose by properly reimbursing standing trustees for the various responsibilities that they perform, and that they must stand ready to perform, in the course of administering a Chapter 12 reorganization.II
 
 
 6
 We engage in plenary review of an appeal from a bankruptcy decision rendered by a district court. See In re Zick, 931 F.2d 1124, 1126 (6th Cir.1991).
 
 
 7
 The Beards proposed a "disposable income plan" to the bankruptcy court, under which they would remit all scheduled payments directly to four categories of their creditors. The plan proposed direct payments for: (1) the fully secured $38,241 claim of Farm Credit Services Corporation ("FCSC"); (2) the $89,788 secured portion of Farmers' Home Administration's ("FmHA") undersecured $912,530 claim; (3) the claims of Perry and Fairfield Counties for approximately $19,000 in unpaid back property taxes; and (4) various postpetition administrative expense claims, as well as approximately $5,000 in attorney's fees.
 
 
 8
 The bankruptcy court, affirmed by the district court, decided to permit direct debtor-to-creditor payment of the first listed class of secured claims and to deny similar direct transfers for the last two classes, 134 B.R. 239. Those decisions are not at issue here.[3] Thus, this appeal centers upon whether a Chapter 12 debtor may directly pay the secured portion of an undersecured creditor's claim.[4]
 
 
 9
 In reaching his decision to allow the debtors to make direct payments on the secured portion of their undersecured debt to FmHA, the bankruptcy judge acknowledged that two competing lines of case law have emerged on this question. Two circuits have held that a Chapter 12 debtor may not bypass the trustee when making payments on impaired debts. In re Schollett, 980 F.2d 639 (10th Cir.1992), and In re Fulkrod, 973 F.2d 801 (9th Cir.1992), aff'g 126 B.R. 584 (9th Cir. BAP 1991).[5] Nevertheless, in this case, the bankruptcy court found more persuasive two decisions that have been published within this circuit, In re Overholt, 125 B.R. 202 (S.D. Ohio 1990), and In re Pianowski, 92 B.R. 225 (Bankr.W.D. Mich.1988), upholding direct debtor-to-creditor payments on such debt.
 
 
 10
 In Pianowski, the court looked carefully at Chapter 12's legislative history:
 
 
 11
 Chapter 12 was created by Congress because many family farmers ... cannot qualify under Chapter 13 because their debts exceed the statutory limits.... Further, the possible Chapter 11 relief to family farmers is often "needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable." ... Chapter 12 is intended to "give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." In Chapter 12, it is intended that family farmers will receive "important protection from creditors"; however, Chapter 12 is also intended to prevent abuse of the bankruptcy system and to ensure farm creditors will receive fair debt repayment treatment.
 
 
 12
 92 B.R. at 232 (quoting H.R. Conf. Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5249).
 
 
 13
 Based on its reading of the legislative history and policy reasons that underlie Chapter 12, the Pianowski court crafted an extensive list of thirteen "non-exclusive factors" that a court may "consider" when determining whether to grant a debtor's request to bypass the trustee and the attendant fee. Among the main considerations, these factors consider a debtor's sincerity in filing for Chapter 12 protection, the prospects that the proposed reorganization will succeed, the respective creditors' willingness to be paid directly by the debtor, and the creditors' capabilities of monitoring and acting to enforce the debtor's adherence to the reorganization plan's schedule of payments. See generally 92 B.R. at 233-34.
 
 
 14
 In applying the above factors, the court must carefully balance an individual debtor's needs and desires to succeed in his or her reorganization efforts, a creditor's rights in preserving its property interest and receiving fair repayment of its indebtedness, and society's interests in an efficient, economical and non-abusive bankruptcy reorganization process.
 
 
 15
 Ibid. In Pianowski, the court allowed the debtors to pay some, though not all, of their creditors directly, thereby saving them more than $30,000 in trustee's fees, although they still incurred more than $12,000 in such fees for those payments that the court directed be made through the trustee.
 
 
 16
 In Overholt, the court adopted a four-part "tripartite test" [sic], 125 B.R. at 212 (citing In re Erickson Partnership, 77 B.R. 738, 745 (Bankr.D.S.D.1987), aff'd, 83 B.R. 725 (D.S.D.1988)), inclining to approve direct debtor-to-creditor payments on impaired claims when:
 
 
 17
 i) that creditor's claim receives the same treatment as other claims within a particular class of creditors, unless that creditor agrees to less favorable treatment; ii) that creditor's claim is not "preferred" to other "unsecured" creditors similarly situated, thereby discriminating against those creditors; iii) that creditor has established a self-monitor and remedy device in the event of plan obligation failure; and iv) the creditor does not object to direct payment.
 
 
 18
 (Emphasis in original.) In applying Pianowski and Overholt to the Beards' proposals here, the bankruptcy judge found that "several factors lead to the conclusion that direct payments are particularly appropriate in this case":
 
 
 19
 [T]he Debtors have been in bankruptcy prior to the present proceeding, [but] their prior bankruptcy occurred over twenty years ago; the Debtors have been engaged in farming operations since 1959; the Debtors have complied with all statutory and court-imposed duties post-filing; the Trustee has found the Debtors' Plan, aside from the direct payment provisions, has been proposed in good faith; FmHA is the Debtors' only undersecured creditor; FmHA has consented expressly to its proposed Plan treatment; FmHA is legally sophisticated in that it is represented by competent counsel--the U.S. Attorney--and also is capable of monitoring compliance with the Plan; the Trustee, without additional instructions from the Court, will not be able to monitor the Debtors' payments to FmHA; at this point in the proceedings, there is no foreseeable burden on the Trustee; based on the Court's decision as to other methods of payments proposed by the Plan, the Chapter 12 Trustee will still receive compensation; and, the Court does not anticipate any abuse of the bankruptcy system.
 
 
 20
 J.A. at 190-91. Similarly, under the Overholt "tripartite test," the bankruptcy judge found that:
 
 
 21
 FmHA's claim receives the same treatment as other claims within a particular class of creditors; to the extent FmHA's claim is secured, it will receive full payment, but to the extent FmHA is an undersecured claimant, it will receive the same dividend provided to all unsecured claimants. Thus, FmHA, to the extent it is undersecured, is not 'preferred' to other 'unsecured' creditors similarly situated. While FmHA has not established a specific remedy in the event the plan obligation fails, FmHA is represented by competent and sophisticated legal counsel. Moreover, FmHA has not objected and has even consented expressly to direct payment. The Overholt test is satisfied.
 
 
 22
 J.A. at 191 (internal quotation marks in original). With regard to the impact of its decision on the adequacy of the trustee's compensation, the court invited the trustee to file a request later, if he were ultimately to find his compensation to be inadequate. In this context, the court expressly stated its readiness to order regular monthly payments by the debtor to the trustee "to cover the Trustee's reasonably incurred costs and expenses," if necessary. J.A. at 201.
 
 III
 
 23
 In challenging the lower courts' findings of fact and rulings on law, Appellant presents a contrary view, based on statutory construction, legislative history, public policy, and circuit case law.
 
 
 24
 Congress clearly intended that the trustee in bankruptcy play a significant role in the administration of estates under Chapter 12. Under 11 U.S.C. Sec. 1202, the trustee is required to account for property received, ensure that the debtor makes timely payments, examine proof of claims, oversee the discharge of the debtor, furnish information concerning the estate, make a final report and accounting, appear at hearings and perform a host of other services for the debtor and the bankruptcy court.
 
 
 25
 ....
 
 
 26
 If Congress had intended to fund the trustee out of the common burse, such a decision presumably would have been a valid exercise of its authority. Instead, Congress required that a percentage of the assets of the estate in bankruptcy fund the trustee, and, more specifically, a percentage of payments received by the trustee under the plan of reorganization. It is fairly certain that if the debtor is entitled to make direct payments to impaired creditors the trustee will receive nothing. This is hardly an outcome Congress could have intended.
 
 
 27
 Fulkrod, 973 F.2d at 802-03 (citations omitted).
 
 
 28
 Appellant notes that Congress placed the United States trustees in the executive branch of government, appointed by the Attorney General. Thus, although the statutory framework allows the courts a rather broad measure of discretion to allow "reasonable compensation" to a Chapter 7 or 11 bankruptcy trustee, see 11 U.S.C. Secs. 105(a), 326(a), 330(a), Congress expressly denied such judicial discretion in a Chapter 12 reorganization.[6] Instead, "Section 586(e) of title 28 provides affirmatively who does determine compensation of standing trustees--the Attorney General, in consultation with the United States Trustee.... The clear and categorical language committing the setting of fees to the Attorney General does not suggest an oversight function for the courts." Schollett, 980 F.2d at 643 (footnotes omitted) (citations omitted). In Appellant's view, a reduced role for the courts in Chapter 12 bankruptcies is reinforced by a reading of the chapter's legislative history:
 
 
 29
 Prior to the Bankruptcy Reform Act of 1978 ... the bankruptcy courts handled both the judicial and the administrative functions in bankruptcy.... [T]he bankruptcy courts organized and scheduled meetings of creditors, set up creditors' committees, appointed trustees, and set trustees' fees. In Congress'[s] view this lack of separation of functions eroded public confidence in bankruptcy proceedings and burdened judges with unnecessary administrative obligations. Congress therefore implemented a pilot program in a limited number of judicial districts which transferred the administrative bankruptcy functions to United States Trustees appointed by the Attorney General.
 
 
 30
 ... The pilot program was generally considered a success and the 1986 Act [which included the new Chapter 12] therefore provided for its phase-in nationwide.
 
 
 31
 980 F.2d at 641-42 (citing H. Rep. No. 764, 99th Cong., 2d Sess. 17-19, reprinted in 1986 U.S.C.C.A.N. 5227, 5230).
 
 
 32
 In addition, Appellant argues that Chapter 12 standing trustees assume significant financial risks. When a trustee works on a plan that fails to win judicial confirmation, he receives no remuneration for his time and effort because there will be no payments for him to transfer from debtors to creditors, and therefore no fees. Even if the plan is confirmed, the undertaking may fail. Therefore, Appellant contends that, as a matter of fairness to Chapter 12 standing trustees, Congress granted them fees on all funds that debtors repay to creditors in the course of reorganizations that win court approval. As a result, Appellant challenges the Pianowski and Overholt approach, which would not only leave the standing trustee unreimbursed when proposed Chapter 12 plans fail to gain court approval, but would also deny the trustee a full measure of compensation in some cases when successful debtors seek to pay their creditors directly, in the course of reorganizations that do proceed successfully.
 
 
 33
 Thus, in the Appellant's view, the trustee's percentage fee is not merely a commission for passing along money. Rather, it compensates the trustee for the risks attendant in his position, for the other cases in which he ultimately receives no fee at all for his work, and for the many tasks that he performs besides collecting and distributing the debtors' repayments of prepetition debt. Moreover, only by handling each payment personally can the trustee directly monitor the debtors' progress in meeting the plan's demands.
 
 IV
 
 34
 This matter comes before us as a question of first impression. There is merit in both parties' arguments, but we hold that Appellees' interpretation more closely accords with the law as enacted by Congress. "It is both curious and noteworthy that [28 U.S.C.] Sec. 586(e)(2) does not state 'payments received or that could have been received,' 'payments made by the trustee or debtor under the plan,' or other similar language which would mandate payment of the percentage fee on a constructive receipt basis." Pianowski, 92 B.R. at 232. Instead, Congress constructed a scheme that envisioned that debtors would at times be able to pay their debts directly to their creditors, allowing them to bypass the trustee. Under that framework, a debtor clearly may directly pay off secured claims. 11 U.S.C. Sec. 1225(a)(5)(B)(ii) (allowing distribution "by the trustee or the debtor" of debtor property "with respect to each allowed secured claim").[7] Indeed, we note that Appellant already accepts the principle that debtors may pay fully secured creditors directly.[8]
 
 
 35
 We are left with the question of how undersecured claims should be treated. In this case, the Beards owe FmHA $912,530. This debt is secured by collateral valued at $89,788. Each party has adopted its own term for this claim. Appellant speaks of FmHA's "impaired, unsecured claim," trying to equate that debt with other unsecured claims that must be paid through the standing trustee. Appellees style it a "modified, secured claim," seeking to pigeon-hole the debt in the category defined by 11 U.S.C. Sec. 1225(a)(5)(B)(ii), which allows debtors to bypass their trustees. So rigidly do the contesting parties adhere to their adopted code words that at times their briefs seem to be talking about different cases. Neither party calls the $89,788 segment of the Beards' debt to FmHA "the secured portion of the undersecured claim." We do.
 
 
 36
 Under 11 U.S.C. Sec. 506(a), "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." Under the plain meaning of Sec. 506(a), "if the value of the collateral is less than the amount owing to the creditor, the claim is bifurcated for bankruptcy purposes: It is a secured claim to the extent of the value of the collateral and an unsecured claim for the balance--that is, the deficiency." George M. Treister, J. Ronald Trost, Leon S. Forman, Kenneth N. Klee & Richard B. Levin, Fundamentals of Bankruptcy Law Sec. 6.03, at 277 (2d ed.1988).
 
 
 37
 Thus, based on the plain language of the statute, we hold that, just as a Chapter 12 debtor may bypass the trustee and directly pay fully secured claims, so may the debtor directly pay the secured portion of undersecured claims.[9] If our holding results in a reduction of trustees' fees, it also results in a reduction of their workload. Congress anticipated that the demand for Chapter 12 trustees' services would not remain static, and the statutory scheme explicitly instructed the Attorney General that the supply of Chapter 12 trustees should not exceed the demand:
 
 
 38
 If the number of cases under Chapter 12 or 13 of title 11 commenced in a particular region so warrants, the United States trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee....
 
 
 39
 28 U.S.C. Sec. 586(b) (emphasis added); see also In re Erickson Partnership, 83 B.R. at 729 (adopting a similar analysis and concluding that "[i]f giving effect to this intent will undermine the funding of the trustee system, as the trustees suggest, a remedy must be sought in Congress, not the courts").
 
 
 40
 Inasmuch as a Chapter 12 debtor may make direct payments to secured creditors, thereby avoiding trustee fees, we are not persuaded that debtors' payments on the secured portion of their undersecured debts should be treated differently. After conducting a plenary review of all the conflicting arguments, based primarily on our reading of the statutory text's plain meaning, we hold that a Chapter 12 debtor may bypass the standing trustee and directly pay the secured portion of an undersecured debt to the creditor. We therefore AFFIRM the judgments of the district court and bankruptcy court.
 
 
 
 *
 The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Under Chapter 12, a debtor proposes a reorganization plan that reschedules debt payments over a three-year postpetition period. In a particularly pressing case, the debtor may show cause to justify a five-year repayment plan. 11 U.S.C. Sec. 1222(c). The chapter's main benefit is that it allows a family to retain its farm while reorganizing. Id. Secs. 1203, 1204
 
 
 [2]
 The laws governing United States trustees are codified at 28 U.S.C. Secs. 581-589a. These individuals are federal executive officers, appointed by the Attorney General to perform the duties assigned in id. Sec. 586. Among those responsibilities, United States trustees are required to "establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11," id. Sec. 586(a)(1). Furthermore:
 If the number of cases under chapter 12 ... commenced in a particular region so warrants, the United States trustee for such region may ... appoint one or more individuals to serve as standing trustee.... The United States trustee for such region shall supervise any such individual appointed as standing trustee in the performance of the duties of standing trustee.
 Id. Sec. 586(b). In this case, United States trustee Michel appointed standing trustee Pees to supervise the administration of the Beards' Chapter 12 reorganization. The United States trustee has standing to bring this appeal because of his ultimate responsibility to administer the fees collected by his appointed standing trustees. Id. Sec. 586(e)(2). Moreover, this court has held that he bears general administrative responsibility for bankruptcy proceedings. See In re Revco D.S., Inc., 898 F.2d 498, 499-500 (6th Cir.1990).
 
 
 [3]
 Under the express terms of 11 U.S.C. Sec. 1225(a)(5)(B)(ii), the debtor may pay directly a secured, unimpaired creditor's claims in a Chapter 12 reorganization. As to the method of paying claims for back taxes, for postpetition administrative expenses, and for attorney's fees, there is no direct statutory authority, but a balancing test that weighs the equities has evolved in the courts, see Matter of Pianowski, 92 B.R. 225, 233-34 (Bankr.W.D. Mich.1988). The debtors have not appealed the courts' findings that the back taxes and the attorney's fees should be paid through the trustee
 
 
 [4]
 As noted above, the $912,530 FmHA claim is secured by only $89,788 in real collateral. In a very serious and revealing contest over semantics, Appellant characterizes the secured portion of the undersecured FmHA claim as an "impaired, unsecured claim," while Appellees style it a "modified, secured claim." Neither party calls it the "secured portion of the undersecured claim."
 
 
 [5]
 Recently, the Eighth Circuit, directly challenging the reasoning of Fulkrod, upheld direct payment by Chapter 12 debtors to "impaired secured creditors." Wagner v. Armstrong, 36 F.3d 723, 726 (8th Cir.1994)
 
 
 [6]
 In a case under chapter 12 or 13 of this title, the court may not allow [additional] compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28
 ....
 11 U.S.C. Sec. 326(b).
 
 
 [7]
 Because the parties do not raise the issue on appeal, we need not consider whether unsecured claims must be paid through the trustee
 
 
 [8]
 Appellant's recognition of the Chapter 12 debtor's right to pay fully secured creditors directly is reflected by his decision to appeal only that component of the lower courts' rulings that affects the undersecured claim of FmHA. See supra note 3
 Similarly, the appellees concede that certain kinds of payments must always be conveyed through the trustee, among them: (a) the kinds of high-priority debts, enumerated in 11 U.S.C. Sec. 507, that must be paid in full in any bankruptcy; (b) unsecured claims; and (c) secured claims that will be fully satisfied during the life of the reorganization plan, where the creditor's rights have been modified. See In re Kline, 94 B.R. 557, 560 (Bankr.N.D. Ind.1988).
 
 
 [9]
 The Eighth Circuit has recently resolved a similar question in Wagner v. Armstrong, 36 F.3d 723 (8th Cir.1994). The Eighth Circuit explicitly considered and rejected the language of Fulkrod, 36 F.3d at 726. The court there referred to the claims at issue as "impaired secured" claims, the same term as used by the standing trustee here in an amicus brief. Even so, the court upheld the direct payments, based on the statutory language, and reached the same decision that we do