_____

No. 95-4114
_____

Joel Pelofsky, United States       *
Trustee,                           *
                                   *
          Appellant,               *
                                   *
     v.                            *
                                   *
Milus Gary Wallace, doing          *
business as Wallace's              *  Appeal from the United States
Greenhouse; Wanda Harline         *  District Court for the
Wallace,                           *  Eastern District of Missouri.
                                   *
          Appellees.               *
                                   *
William Frye,                      *
                                   *
          Trustee.                 *
_____

Joel Pelofsky, United States       *
Trustee,                           *
                                   *
          Appellant,               *
                                   *
     v.                            *
                                   *
Jackie Wallace; Jacqueline        *
Wallace,                           *
                                   *
          Appellees.               *
                                   *
William Frye,                      *
                                   *
          Trustee.                 *
_____

Joel Pelofsky, United States       *
Trustee,                           *
                                   *
          Appellant,               *
                                   *
                                   *
Samuel R. McAnally; Shirley L.    *
McAnally,                          *
                                   *
          Debtors.                 *

William Frye,                          *
                                       *
          Trustee.                     *


                        _____

                Submitted:  June 10, 1996

                 Filed:  December 12, 1996
                        _____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     DOTY,[1] District Judge.


HENLEY, Senior Circuit Judge.


     The sole issue in this consolidated appeal is whether under 28
U.S.C. § 586(e) the percentage fee for a Chapter 12 standing
trustee in a case filed under the Family Farmer Bankruptcy Act of
1986, 11 U.S.C. §§ 1201-31 (the Act), is based on amounts the
trustee receives from the debtor and disburses to creditors, as the
debtors argue, or on all amounts received by the trustee from the
debtor -- including amounts for the trustee's fee -- as the United
States Trustee (UST) argues.  The district court, upholding a
decision of the bankruptcy court, In re Wallace, 167 B.R. 531
(Bankr. E.D. Mo. 1994), agreed with the debtors.  Pelofsky v.
Wallace, 197 B.R. 82 (E.D. Mo. 1995).  We affirm.


     Chapter 12 "was designed to 'give family farmers facing
bankruptcy a fighting chance to reorganize their debts and keep
their land . . . while at the same time, preventing abuse of the
system and ensuring that farm lenders receive a fair repayment.'"
Rowley v. Yarnell, 22 F.3d 190, 192 (8th Cir. 1994) (quoting H.R.
Conf. Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), reprinted in
1986 U.S.C.C.A.N. 5227, 5249)).  Because family farmers had found

_____

     [1]The Honorable David S. Doty, United States District Judge for
the District of Minnesota, sitting by designation.

-2-

reorganization under "Chapter 11 needlessly complicated, unduly time consuming, inordinately expensive, and, in too many cases unworkable," H.R. Conf. Rep-99-958 at 48, 1986 U.S.C.C.A.N. at 5249, it was the intent of Congress to "provide farmers with a faster, simpler, and cheaper alternative to Chapter 11 . . . procedures." Rowley, 22 F.3d at 193.  Thus, under Chapter 12, as a general rule, the farmer, as debtor-in-possession, stays on his land and operates his farm.  11 U.S.C. § 1203.  In addition, in every Chapter 12 case a trustee is appointed.  Id. § 1202.  The Act requires that a farmer submit "all or such portion of his future earnings or other future income . . . to the supervision and control of the trustee as is necessary for the execution of the plan[,]" id. § 1222(a)(1), and "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."  Id. § 1226(c).

If the number of Chapter 12 or 13[2] cases in a region "so warrants," the UST in that region may "appoint one or more individuals to serve as standing trustee to serve in cases under such chapter."  28 U.S.C. § 586(b).  Section 586 provides for compensation of a Chapter 12 or 13 standing trustee.  Section 586(e)(1) provides:

> The Attorney General, after consultation with a [UST]
> that has appointed an individual . . . to serve as
> standing trustee in cases under chapter 12 or 13 of title
> 11, shall fix-
> 
>                       * * *
> 
> (B) a percentage fee not to exceed-
>                       * * *
> (ii) in the case of a debtor who is a family farmer, the
> sum of-
>     (I) not to exceed ten percent of the payments made
> under the plan of such debtor, with respect to payments

---

[2]"With some exceptions, Chapter 12 is modeled after Chapter 13 but is available only to an individual family farmer and his or her spouse."  In re Wagner, 36 F.3d 723, 725 n.1 (8th Cir. 1994).

-3-

in an aggregate amount not to exceed $450,000; and
     (II) <u>three percent of payments made under the plan</u>
of such debtor, with respect to payments made after the
aggregate amount of payments made under the plan exceeds
$450,000;
based on such maximum annual compensation and the actual,
necessary expenses incurred by such individual as
standing trustee.

(Emphasis added.)  Section 586(e)(2), in relevant part, provides:


Such individual [the standing trustee] <u>shall collect such percentage fee from all payments received by such individual under plans</u> in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

(Emphasis added.)  The percentage fee is paid "[b]efore or at the time of each payment to creditors under the plan."  11 U.S.C. § 1226(b).


In this case, the debtors' plans calculated the standing trustee's percentage fee based on payments to creditors under the plan.  For example, if payments to creditors under the plan were $10,000.00 and the trustee's fee was set at 10%, the trustee's fee was $1,000.00.  The UST objected because the debtors' calculations conflicted with the policy of the Executive Office of the United States Trustee (EOUST).  According to the EOUST's <u>Handbook for Chapter 12 Standing Trustees</u>, "the percentage fees are calculated on all payments received by the trustee under plans" -- including amounts the trustee receives for his fee.  UST's Addendum at Ex. B at 2.  The manual provides that the debtor should be instructed that "computation can be made by dividing the total amount that is needed under the plan for payments on claims, not including the trustee's fee, by the number derived from subtracting the trustee's percentage fee from 100%."  <u>Id.</u> at Ex. B at 3.  For example, under the EOUST's calculation, if $10,000.00 was required to make all plan payments on claims excluding the trustee's fee and the fee was set at 10%, $10,000.00 is divided by .90 (100% minus 10%) which

-4-

equals $11,111.11, and the trustee's fee is $1,111.11, which is 10% of $11,111.11. Id.

In the bankruptcy court, the debtors and the UST all argued that the meaning of section 586(e) was unambiguous, but disagreed on its meaning. The UST argued that section 586(e)(2) was the relevant provision and that the phrase "all payments [the trustee] received under plans" plainly meant all payments, which would include payments for the trustee's fee. The debtors argued that section 586(e)(1) was the relevant provision and that the plain meaning of the phrase "payments made under the plan" in the context of bankruptcy meant amounts disbursed to creditors. In the alternative, the UST argued that if section 586 were ambiguous, the bankruptcy court should defer to the EOUST's interpretation of the statute under Chevron, USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

The bankruptcy court noted that lower courts were split on the question whether the section 586(e) percentage fee was calculated on all amounts the trustee received from the debtor or only on amounts he received and disbursed. Compare, e.g., In re Edge, 122 B.R. 219, 221 (D. Vt. 1990) ("funds paid to a standing trustee for purposes of paying the standing trustee's percentage fee are not payments under a Chapter 13 repayment plan") with In re Weaver, 118 B.R. 730, 730 (Bankr. D. Neb. 1990) ("the trustee's fee is not a percentage of payment to creditors and claimants"). The bankruptcy court also noted that in In re BDT Farms, Inc., 21 F.3d 1019 (10th Cir. 1994), the Tenth Circuit had held that section 586(e) was ambiguous and under Chevron deferred to the UST's interpretation of section 586(e). However, the bankruptcy court believed no Chevron deference was due, because the plain meaning of "a 'payment under the plan' is a payment by the trustee to the creditors." 167 B.R. at 533. In the alternative, the bankruptcy court held that even if section 586(e) were ambiguous, the UST's interpretation was not entitled to deference because it resulted in a 11.11% fee, in

violation of the 10% cap of subsection (e)(1).  The court also believed that the UST's interpretation was unreasonable because it allowed a standing trustee to collect a fee for "merely receiving its paycheck, . . . a function which has no benefit to the estate." Id. at 534.

On de novo review, the district court affirmed the bankruptcy court's decision.  The district court noted that this court's decision in In re Wagner, 36 F.3d 723 (8th Cir. 1994), which was decided several months after the bankruptcy court's opinion, provided further support for the opinion.  197 B.R. at 87.  In Wagner, this court held that a Chapter 12 debtor could make payments directly to an impaired secured creditor and such direct payments were not subject to a trustee's percentage fee.  We noted that section 586(e)(1) "only establishes the fee structure for Chapter 12 standing trustees[,]" but that section 586(e)(2) "directs when trustee's fees are owing."  36 F.3d at 727.  We reasoned that subsection (e)(2) was the applicable provision and held that the phrase "all payments received by the [trustee] under plans" in subsection(e)(2) "means what it says and requires trustee's fees only on those payments 'received by' the trustee." Id. at 727-28.  The district court also found that Wagner supported the bankruptcy court's alternative holding that the UST's position was impermissible.  The district court believed that allowing the standing trustee to collect a fee on his fee ran counter to this court's statement in Wagner that "'[t]rustee's fees . . . are fees levied for services provided in administering the plan.'"  197 B.R. at 92 (quoting Wagner, 36 F.3d at 726).

On appeal, we review this legal issue de novo.  We are aware that under Chevron courts "defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering."  Smiley v. Citibank (South Dakota), N.A., 116 S. Ct. 1730, 1733 (1996).  However, "that deference does not permit abdication of the judicial responsibility

to determine whether the challenged [action] is contrary to statute, . . . devoid of administrative authority[,]" or is otherwise unreasonable.[3] Aerolineas Argentinas v. United States, 77 F.3d 1564, 1574 (Fed. Cir. 1996). Moreover, "[t]he plain meaning of a statute controls, if there is one, regardless of an agency's interpretation." Hennepin County Med. Ctr. v. Shalala, 81 F.3d 743, 748 (8th Cir. 1996). Thus, our first task is to determine the question whether section 586(e) is ambiguous. In doing so, we keep in mind that "[a]mbiguity is a creature not of definitional possibilities but of statutory context." Brown v. Gardner, 115 S. Ct. 552, 555 (1994). In other words, "the meaning of statutory language, plain or not, depends on context." Id. (internal quotation omitted). As the parties remind us, "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Hennepin County Med. Ctr., 81 F.3d at 748 (internal quotation omitted). At the same time, we must "seek to interpret the statute in a way that includes every word and clause." Id.

The UST argues that section 586(e)(2) is the relevant subsection concerning calculation of the percentage fee and that the plain meaning of "payments received under plans" means all payments received, including payments for the percentage fee. The UST asserts that had Congress intended to limit a Chapter 12 percentage fee to amounts disbursed, it would have said so

---

[3]The debtors correctly point out that Chevron deference is only appropriate "[w]hen Congress . . . has delegated policy making authority to an administrative agency." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696 (1991). In this case, the debtors do not deny that section 586 delegates authority to the Attorney General to set the percentage fee, but argue that there is no showing that the Attorney General delegated authority to the EOUST. We do not resolve the delegation issue. Even assuming proper delegation, for reasons to be stated, in the circumstances of this case we believe no Chevron deference is due to the UST.

explicitly.  See Brown v. Gardner, 115 S. Ct. at 556.  The UST notes that 11 U.S.C. § 326(a), which concerns trustee's fee in Chapters 7 and 11, provides that the trustee's fee is a percentage of "moneys disbursed or turned over in the case by the trustee to the parties in interest."  In the context of Chapter 12, the UST also notes that Chapter 12 differentiates between payments and payments to creditors.  For example, the UST points out that section 1226(b) provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid" certain unpaid administrative expenses and "the percentage fee fixed for [any] such standing trustee."  In addition, the UST notes that section 1226(a) provides that "[i]f a plan is not confirmed, the trustee shall return any such payments to the debtors, after deducting" certain unpaid administrative expenses and "the percentage fee fixed for such standing trustee."  The UST argues that if "payments" meant disbursements to creditors, as the debtors contend, then there would be no percentage fee owing if the plan was not confirmed since there would be no payments to creditors.[4]

On the other hand, the debtors argue that section 586(e)(1) is the applicable provision, but even if subsection (e)(2) is the relevant subsection, it must be read in combination with subsection (e)(1).  The debtors argue that in the context of bankruptcy the

---

[4]In Stahn v. Haeckel, 920 F.2d 555 (8th Cir. 1990), cert. denied, 500 U.S. 953 (1991), this court appears to have rejected the UST's assertion that if a plan is not confirmed there would be no payments to creditors and thus no fee owing.  In Stahn, we noted section 1226(a) did not expressly authorize a bankruptcy court to authorize pre-confirmation payments, but held that "a bankruptcy court may in its discretion require a debtor to make payments prior to plan confirmation." Id. at 558.  "Thus, a debtor in a chapter 12 proceeding may be subjected to involuntarily paying trustee fees . . . if a bankruptcy judge orders pre-confirmation payments." Id. at 557.  See also Randy Rogers, et al. Collier Farm Bankruptcy Guide, § 4.07[6], at 4-89 (1994) (trustee's fee due in unconfirmed plan because of payments to administrative creditors).

term "payments made under the plan" as used in either section plainly means payments to creditors. See In re Beard, 45 F.3d 113, 115 (6th Cir. 1995) (court without analysis assumes that standing trustee's fee is based on "payments that the debtor transfers through the trustee to creditors under the reorganization plan's terms"). The debtors assert that the structure of Chapter 12 makes clear that payments are disbursements to creditors. See Rake v. Wade, 508 U.S. 464, 474 (1993) (internal quotation omitted) ("statutory terms are often clarified by the remainder of the statutory scheme"). Noting that 11 U.S.C. § 1226(c) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan," the debtors argue that the trustee's primary duty is to act as a disbursing agent, and it is for this function that he is compensated. See Beard, 45 F.3d at 115 ("standing trustee's role in a family-farm reorganization . . . primarily involves collecting the debtor's postpetition income and making proper payments, in accordance with the plan, to the waiting creditors"). The debtors also point out that section 1226(a) provides that "[p]ayments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan" and argue that the word "funds" means amounts for the standing trustee's fee. At oral argument, the debtors pointed out that 11 U.S.C. § 1222, which lists the required contents of a plan, and section 1225, which lists requirements for confirmation of a plan, do not mention the percentage fee.

Although we agree with the UST that 586(e)(2) is the relevant provision for calculation of the percentage fee, we also agree with the debtors that it must be read in combination with subsection (e)(1). After consideration of the statutory language and context, we conclude that the meaning of section 586(e) is ambiguous. Moreover, "[w]e have searched for guidance in the legislative history." BDT Farms, 21 F.3d at 1022. Unfortunately, we found "no legislative history reflecting Congressional consideration of . . .

Chapter 12 provisions in relation to the applicable provisions of Title 28 governing United States Trustee fees." Id. (internal quotation omitted). Thus, like the Tenth Circuit in BDT Farms, we conclude that "[w]hether Congress intended to allow the standing trustee to, in effect, collect a fee on his or her fee, or intended to limit the trustee's fee to a percentage of disbursements, is not clear from the statutory language, the larger statutory context, or the legislative history." Id. at 1023.

However, unlike the Tenth Circuit, we do not accord the UST Chevron deference. We agree with the district court and bankruptcy court that the UST's interpretation is unreasonable.[5] The UST's interpretation effectively results in an 11.11% fee in violation of the 10% cap of section 586(e)(1). As the bankruptcy court reasoned:

> [u]nder the UST's position, . . . [i]f the Farmer pays $110 to the trustee, with $100 intended for the Bank under the plan and $10 for the 10% commission, under the trustee's theory of entitlement to 10% of monies received, he would then assess a 10% fee against that $10 (i.e. $1). Once the trustee obtains this additional $1, another 10% fee would be charged (i.e. 10 cents). Again, when the Farmer transfers the 10 cents, the trustee would charge 10% (i.e. 1 cent). Thus it would cost the Farmer $111.11 to ensure that Bank receives its promised $100.

167 B.R. at 532-33.

We realize that the EOUST manual sets forth a method of calculation to justify its position that a trustee's fee of

_____

[5]Although in BDT Farms the Tenth Circuit held that the UST's interpretation was reasonable, it did so "essentially without analysis." In re Turner, 168 B.R. 882, 885 (Bankr. W.D. Tex. 1994). In Turner, the court believed that the Tenth Circuit "[i]n apparent frustration . . . simply elected to defer to the United State Trustee's proffered interpretation of section 586(e)." Id. As indicated previously, Chevron deference does not mean judicial abdication.

$1111.11 on a plan payment of $10,000.00 is not an 11.11% fee, but is a 10% fee.  Although there is no legislative history precisely on the issue of the calculation of the percentage fee, we do not believe that the drafters, whose intent was "to provide family farmers with a faster, simpler, and cheaper alternative" to bankruptcy, Rowley, 22 F.3d at 193, envisioned that the UST would instruct the farmer that "computation [of the percentage fee] can be made by dividing the total amount that is needed under the plan for payments on claims, not including the trustee's fee, by the number derived from subtracting the trustee's percentage fee from 100%."  UST's Add. at Ex. B at 3.  Nor do we believe that the drafters envisioned that a farmer would be told to disregard common sense and economic reality and accept the UST's assertion that a fee of $1,111.11 on a plan payment of $10,000.00 is a 10% fee, not an 11.11% fee.  It seems to us the "faster, simpler, and cheaper" way to calculate the percentage fee is on the basis of payments to creditors.  Moreover, we share the concerns of the bankruptcy court and the district court that a family farmer attempting to reorganize might find it difficult to understand why a trustee should collect a fee for "merely receiving its paycheck."  167 B.R. at 534.  See also In re Westphall, 168 B.R. 337, 366 (Bankr. C.D. Ill. 1994) ("standing trustee should not receive a fee for disbursing funds to himself").

We also believe that the UST's interpretation is difficult to reconcile with this court's decision in Wagner.  The UST is correct that on the merits Wagner only decided that payments a farmer makes directly to creditors are not subject to the percentage fee because the trustee does not receive the payments as required by section 586(e)(2).  However, the UST ignores the fact that before reaching the merits this court was confronted with a mootness challenge, the resolution of which we believe is instructive.

In Wagner, the farmers argued that any issue regarding trustee's fees was moot because they had been discharged from

-11-

bankruptcy and the trustee had failed to stay or appeal the discharge.  This court disagreed.  We noted that "[a] discharge under the bankruptcy code discharges 'debts provided for by the plan,'" citing 11 U.S.C. § 1228(a), but reasoned that under Chapter 12 standing "[t]rustee's fees are not 'debts provided for by the plan,' but are fees levied for services provided for in administering the plan."  36 F.3d at 726.  Indeed, we characterized "[a] claim against the debtors for trustee's fees [a]s collateral to the bankruptcy action."  Id.  Thus, under Wagner, if a claim for trustee's fees is "collateral" to the bankruptcy proceeding, although a payment for trustee's fee may be a payment, we do not believe it is a payment "under" a plan, as is required by section 586(e)(2).  See In re Turner, 168 B.R. 882, 887 (Bankr. W.D Tex. 1994) (trustee's percentage fee is "paid outside the distributional scheme of the statute");[6] In re Edge, 122 B.R. at 221 ("funds paid to a standing trustee for purposes of paying the standing trustee's percentage fee are not payments under a . . . plan").

---

[6]In Turner, the court contrasted a Chapter 13 standing trustee's percentage fee with a trustee's fee in a Chapter 7 case. The court noted that "[t]he trustee's fee in chapter 7 cases is regulated by the court," 168 B.R. at 887, via section 11 U.S.C. § 326(a), which provides that a court "may allow reasonable compensation under section 330 of this title of the [Chapter 7 or 11] trustee for the trustee's services."  The court further noted that the compensation award "qualifies as an administrative expense claim under section 503(b)(2) that is entitled to priority treatment under section 507(a)."  168 B.R. at 887.  See also In re Larsen, 59 F.3d 783, 785-86 (8th Cir. 1995) (explaining 11 U.S.C. §§ 330, 503(b), and 507).
     In contrast, the Turner court noted that 11 U.S.C. § 326(b), provides that a "court may not allow compensation for services or reimbursement of expenses of a . . . standing trustee appointed under section 586(b) of title 28."  The court explained that because section 326(b) removed a standing trustee's percentage fee from court supervision under section 326(a), the fee was also "take[n] [] out of section 330(a) (the compensation section), and so out of section 503(b)(1)(A) (the administrative expense section)."  168 B.R. at 886.  In addition, the court noted that "[t]here is no 'priority' for the trustee's percentage fee in section 507, and it does not stand as a 'claim' against the estate."  Id.

We are aware, as the UST points out, that the standing trustee performs services in addition to disbursing funds to creditors. See 11 U.S.C. § 1202(b). However, in Wagner the services for which the standing trustee was compensated were his services as a disbursing agent. 36 F.3d at 726. See also In re Beard, 45 F.3d at 119-20 (acknowledging standing trustee performs services in addition to disbursing funds, but holding debtor can bypass trustee and avoid paying fees on direct payments). As the court stated in Beard, if rejecting the UST's position "'will undermine the funding of the trustee system, as the [UST] suggest[s], a remedy must be sought in Congress, not the courts.'" Id. at 120 (quoting In re Erickson Partnership, 83 B.R. 725, 729 (S.D. 1988)).[7]

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]We are also aware of the importance of uniform nationwide standards in administering bankruptcy cases. Because the meaning of section 586 concerning calculation of the standing trustee's percentage fee under section 586(e) has split inferior federal courts, perhaps Congress, or the Supreme Court, will clarify this issue.

-13-