Joel PELOFSKY, United States Trustee[1], Appellant,

v.

Milus and Wanda WALLACE, Jackie and Jacqueline Wallace, Samuel and Shirley McAnally, Appellees.

Nos. 1:94CV 00086 LMB, 1:94CV 00099 LMB and 4:94CV 01188 TIA.

United States District Court, E.D. Missouri, Southeastern Division.

Oct. 6, 1995.

---

1. In a Memorandum to Clerk filed on October 2, 1995, the United States Trustee substituted Joel Pelofsky for John R. Stonitsch as United States Trustee.

Leonora S. Long, U.S. Department of Justice, Office of Trustee, St. Louis, MO, for John R. Stonitsch (U.S. Trustee), and Joel Pelofsky.

Paul H. Berens, Partner, Finch and Bradshaw, Cape Girardeau, MO, for Milus Gary Wallace, Wanda Harline Wallace.

Carol Ann Robinson, U.S. Bankruptcy Court, St. Louis, MO, for William Frye (Trustee).

William Frye, Cape Girardeau, MO, pro se.

Rice P. Burns, Jr., Burns and Taylor, Sikeston, MO, for Jackie Wallace, Jacqueline Wallace, Samuel R. McAnally, Shirley L. McAnally.

James S. Cole, Jr., Riezman and Blitz, St. Louis, MO, Carol Ann Robinson, U.S. Bankruptcy Court, St. Louis, MO, for James S. Cole.

### MEMORANDUM AND ORDER

BLANTON, United States Magistrate Judge.

This is a consolidated appeal of three decisions from the United States Bankruptcy Court for the Eastern District of Missouri. The appeal is before the undersigned United States Magistrate Judge by consent of the parties pursuant to 28 U.S.C. § 636(c). The wording of the Statement of Subject Matter and Appellate Jurisdiction, the Statement of the Issues Presented and much of the Statement of the Case which follows is by agreement of the parties.

### Statement of Subject Matter and Appellate Jurisdiction

The original appeals, before consolidation, arose from decisions in three bankruptcy cases in the Eastern District of Missouri. The cases of *In re Milus and Wanda Wallace,* Case No. 1:94CV00086LMB [hereinafter *Wallace I* ]; *In re Samuel and Shirley McAnally,* Case No. 4:94CV01188TIA [hereinafter *McAnally* ]; and *In re Jackie and Jacqueline Wallace,* Case No. 1:94CV00099LMB [hereinafter *Wallace II* ] each involve the same discrete issue and have been consolidated for purposes of appeal. These appeals were taken from the final orders of the Bankruptcy Court entered in each case.

In *Wallace I,* on May 9, 1994, the Bankruptcy Court entered on its docket the May 5, 1994 Memorandum Opinion and Order, 167 B.R. 531, and thereafter, a timely notice of appeal was filed. This Court properly has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

In *McAnally,* on May 20, 1994, the Bankruptcy Court entered on its docket the May 18, 1994 Order of the Court overruling the United States Trustee's Objection to the

Confirmation of the Debtor's Fifth Amended Plan. A timely Notice of Appeal was filed with the Court. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

In *Wallace II*, the Bankruptcy Court entered its June 12, 1994 Order overruling the United States Trustee's Objection to Debtors' Amended Plan of Reorganization. A timely Notice of Appeal was filed. As with the cases above, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

### Statement of the Issues Presented

Whether the Bankruptcy Court erred in its determination that the percentage fee fixed pursuant to the authority of the Attorney General and payable to the Chapter 12 standing trustee pursuant to 28 U.S.C. § 586(e) ["§ 586(e)"], should be calculated based on *all* payments made under the plan by the Debtor to the standing trustee, or should be calculated based solely on amounts to be disbursed by the standing trustee.

### Statement of the Case

A. *Procedural Background in Bankruptcy Court*

#### 1. *Wallace I.*

In this case, the Debtors filed their voluntary petition under Chapter 12 of the United States Bankruptcy Code [hereinafter "Bankruptcy Code"] on April 2, 1993. William H. Frye, the Chapter 12 standing trustee for the Southeastern Division of the Eastern District of Missouri, was assigned the case. The Debtors' Plan was confirmed without objection by the Trustee or the U.S. Trustee and the plan proposed a specific dollar amount to be paid to the Trustee as Trustee's commission pursuant to 28 U.S.C. § 586(e) and proposed that the dollar amount be exactly 10% of the sums disbursed by the Trustee to creditors. Following the Order confirming the Debtors' Chapter 12 Plan, the United States Trustee (UST) filed its Motion to Compel Debtors to Pay Appropriate Fees and its Memorandum in Support of Motion to Compel Debtors to Pay Appropriate Fees, arguing the Debtors failed to pay the trustee the proper amount of fees in this case be-cause they employed an incorrect method of calculation. The Debtors' Response to the motion disputed the formula for computing the trustee's commission. The Court heard the matter on March 15, 1994, and took the matter under submission. The Court entered its Memorandum Opinion and Order in this case, which held that the standing trustee's percentage fee should be calculated according to the funds to be disbursed by the standing trustee, rather than the funds received by him. This appeal followed from that Memorandum Opinion and Order. The Trustee does not join in this appeal.

#### 2. *McAnally.*

This case began as a voluntary petition for relief under Chapter 12 of the Bankruptcy Code on July 2, 1992. The Debtors' Second Amended Plan was confirmed by the Court without objection by the UST. The feasibility portion of the plan specified a 10% payment and 10% was paid until the Debtors filed for modification of the original confirmed plan because the Debtors had sold some of their farmland. The Debtors filed their Fifth Modified Chapter 12 Plan on April 29, 1994. The United States Trustee filed its Objection to Debtors' Amended Plan of Reorganization, arguing that the Plan failed to calculate correctly fees payable to the standing trustee in the case. On May 31, 1994, the Bankruptcy Court entered on its docket the Order of the Court overruling the United States Trustee's Objection to the Plan for the reasons set forth in its decision in *Wallace I*.

#### 3. *Wallace II.*

This case began as a voluntary petition for relief under Chapter 12 of the Bankruptcy Code on September 30, 1994. The Debtors filed their Amended Chapter 12 Plan on April 29, 1994. The United States Trustee objected to the Plan arguing that the method of calculating the fee due the trustee under the plan was in error. The plan provided for the fee to be based on the amount the trustee disbursed rather than the amount paid to the trustee. AT the hearing to consider the confirmation of the Debtors' Plan, the Court announced it would overrule the United States Trustee's objection for the reasons

expressed in *Wallace I.* On June 3, 1994, the Court entered on its docket the Order of the Court overruling the United States Trustee's Objection.

### Statutory and Regulatory Background

Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1201–1231, provides a special proceeding for "family farmers with regular annual income." [2] Debtors seeking protection under Chapter 12 must submit a plan to reschedule their debts. 11 U.S.C. § 1221. The plan must provide for the submission of all, or a portion of all, future earnings to a trustee who applies these receipts to the adjusted debts under the plan. 11 U.S.C. §§ 1222(a), 1226(a). The plan typically calls for payments on prepetition debts, to the extent feasible, for three years, although the bankruptcy court may "for cause" approve a plan calling for payments over a five-year period. 11 U.S.C. § 1222(c).

The Chapter 12 family farm provisions of the Bankruptcy Code, set out in Title II of the 1986 Act, became effective on November 26, 1986. [3] Although § 1202(c) initially provided for the appointment of a standing trustee by the Bankruptcy Court, the 1986 Act also provided that the United States Trustee would ultimately take charge of functions, then performed by the Court, regarding the appointing and setting fees for Chapter 12 standing trustees.

In Chapter 12 cases, as in Chapter 13 cases, Congress expressly has denied the bankruptcy courts any authority to allow compensation or reimbursement of expenses either to a United States Trustee acting as a case-by-case trustee or to a standing trustee appointed pursuant to 28 U.S.C. § 586(e). *See* 11 U.S.C. § 326(b). Further, § 586(e) affirmatively provides that the Attorney General, in consultation with the United States Trustee who has appointed the standing trustee, shall fix a maximum annual compensation for the standing trustee and a percentage fee as detailed in the next paragraph based on the maximum annual compensation and the actual, necessary expenses incurred by the standing trustee.

Section 586(e)(1)(B)(ii)(I) of the Bankruptcy Code, however, provides that the percentage fee may "not ... exceed 10 percent of the payments made under the plan of such debtor" up to $450,000. [4] The statute further states that standing trustees shall collect this percentage fee "from all payments received [by them] under plans." 28 U.S.C. § 586(e)(2). From that percentage fee, standing trustees are entitled to retain certain moneys for both their compensation and actual and necessary expenses. 28 U.S.C. § 586(e)(2).

■ In setting the percentage fee for standing trustees, the U.S. Trustee program is guided by two concerns. First, the percentage fee must be set high enough to provide for a trustee's maximum allowable compensation and allowable expenses. *See In re Savage,* 67 B.R. 700, 703 (D.R.I.1986). Second, because the percentage fee takes money out of a bankruptcy estate, it should be set low enough that it will not result in the payment of a significant surplus into the Treasury.

### Applicable Standard of Appellate Review

The applicable standard of review on appeal is de novo with respect to this issue, which is a question of law. *Miller v. Farmers Home Administration,* 16 F.3d 240 (8th Cir.1994).

---

**2.** Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 ("1986 Act"), P.L. 99–554, 100 Stat. 3088, 3104 *et seq.*

**3.** Although a trustee must be appointed in every Chapter 12 case, not all trustees appointed are standing trustees. In a judicial district where a sufficient number of farm bankruptcy petitions are expected to be filed, the United States Trustee will appoint one or more standing trustees; if no standing trustee has been appointed, "the United States Trustee shall appoint one disinterested person to serve as trustee in the case or the United States Trustee may serve as trustee in the case if necessary." 11 U.S.C. § 1202(a).

**4.** Where payments under the plan exceed $450,000, the maximum percentage fee to which the standing trustee is entitled is 3% of that amount which exceeds $450,000. 28 U.S.C. § 586(e)(1)(B)(ii)(II).

### Discussion

■ The Memorandum Opinion and Order in *Wallace I* is the basis for the Bankruptcy Court's ruling in all three of these cases.

The parties have agreed to the wording of the Statement of the Issue Presented set out above. To repeat, the question is whether the percentage fee of the standing trustee pursuant to § 586(e) should be calculated based on all amounts turned over to the standing trustee by the debtor or should be calculated based on amounts to be disbursed by the standing trustee to creditors. The wording stated in the last sentence is slightly different from the Statement of the Issue Presented agreed to by the parties. As this court sees it, the basic question in this case is whether the word "payments" used in § 586(e)(1)(B)(ii)(I) and in § 586(e)(2) refers to amounts to be disbursed to a creditor as in "I made my house payment" or whether the word "payment" refers to all funds transferred from the debtor to the standing trustee, including both the amounts to be used to satisfy debts to creditors and the amounts to be used as the trustee's fee since those amounts are also "paid" to the standing trustee by the debtor.

United States Bankruptcy Judge Barry S. Schermer, who wrote the opinion and entered the orders appealed from in these cases, illustrated the differing interpretations of § 586(e)(1) with the following examples:

Farmer ("Farmer") a debtor under Chapter 12 proposes in his plan to pay Bank, a creditor in the bankruptcy, $100 in a lump sum. In order to assure that Bank receives $100, Farmer must actually pay more than $100 to the trustee because of his 10% fee imposed by § 586(e)(1). Under the Debtors' reading of the statute, Farmer should pay $110 to the trustee with $100 representing the payment from the trustee to the Bank *i.e.* the "payments made under the plan" contemplated by § 586(e)(1)(B)(ii)(I) and $10 being the 10% (of $100) trustee fee on the payments made under the plan.

The UST bases the 10% fee on the *monies received by the trustee* regardless of whether they were intended to be distributed to creditors under the plan or if they were intended to be the trustee's 10% commission. Under the UST's position, the Farmer must pay $111.11 to the trustee to insure a $100 payment to Bank (a 10% trustee fee on $111.11 is $11.11 with a remainder of $100.00 for Bank). If the Farmer pays $110 to the trustee, with $100 intended for the Bank under the plan and $10 for the 10% commission, under the trustee's theory of entitlement to 10% of monies received, he would then assess a 10% fee against that $10 (*i.e.* $1). Once the trustee obtains this additional $1, another 10% fee would be charged (*i.e.* 10 cents). Again, when Farmer transfers the 10 cents, the trustee would charge a 10% fee (*i.e.* 1 cent). Thus it would cost the Farmer $111.11 to ensure that Bank receives its promises $100. The UST's calculation amounts to multiple 10% fees upon 10% fees.

*In re Wallace,* 167 B.R. 531, 532–33 (Bankr. E.D.Mo.1994).

Judge Schermer held that the phrase "payment under the plan" of such debtor contained in § 586(e)(1)(B)(ii)(I) is a payment by the trustee to the creditors. *Id.* Judge Schermer analyzed § 586(e)(1)(B)(ii)(I) in conjunction with § 586(e)(2). He found that § 586(e)(1) sets the percentage of the fee and § 586(e)(2) indicates the source of the funds from which the fee is to be taken. The judge found that the source was required to be specified because there are often several sources of funds from which a trustee might collect his fee and that Congress, in order to eliminate confusion as to the source of funds from which the fee should be collected, designated in § 586(e)(2) that "Such individual [trustee] shall collect such percentage fee from all payments received by such individual [trustee] under plans in the case under Chapter 12. . . ." The judge reasoned that if Congress intended that the trustee's fee would be based on all funds delivered to the trustee, including the trustee's percentage fee, it would have used the same language as in § 586(e)(1), *i.e.*, "payments made under the plan of such debtor" in 586(e)(2) instead of the words Congress did use that the percentage fee should be taken from "all payments received by such individual [trustee]."

The Bankruptcy Judge asserted that the trustee acts as a conduit for payments to creditors. He held that "[I]t is the Chapter 12 Trustee who will be accepting the funds from the Debtors and then making the payments to creditors under the plan." *Id.* at 533. The Court held that Congress intended that the Chapter 12 trustee earn its fee from payments made to creditors and to collect the fee from all the payments received by the Chapter 12 trustee.

The Bankruptcy Court held that the interpretation of § 586(e) is not an issue which should be deferred to the United States Attorney General under *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), as urged by the United States Trustee (UST), for two reasons: (1) § 586(e)(1) when read with § 586(e)(2) is not ambiguous; and (2) the Attorney General's interpretation of how the fee is to be calculated is not a permissible construction of the statute. The Bankruptcy Court found that § 586(e)(1) is unambiguous in that it states quite clearly that the trustee's fee is "not to exceed 10% of the payments made under the plan of such debtor." It found further that the position of the United States Trustee results in a percentage fee amounting to 11.11%, as shown by the example used earlier, in violation of the 10% limitation. The Bankruptcy Court held that the 10% limitation of § 586(e) is unequivocal.

The Bankruptcy Judge held that the trustee's reading of § 586(e)(1) runs contrary to the Bankruptcy Code's enumeration of the duties of a trustee. Section 1202(b) lists those duties some of which were noted in the opinion. The judge then pointed out that under the UST's interpretation the trustee would be attempting to seek reimbursement "for nothing more than processing its own fee" and felt that the trustee's construction runs counter to the statute's "goal of providing a fair method of compensation and reimbursement for those individuals who perform the duties of trustee." The judge continued "When a trustee reviews claims and sends out payments to creditors as they are listed in the plan, it is performing a duty which merits remuneration. However, by charging a 10% fee for merely receiving its paycheck, the trustee is performing a function which has no benefit to the estate." *Wallace,* 534.

The Bankruptcy Judge pointed out that Chapter 12 of the Bankruptcy Code is similar to Chapter 13, citing *In re Kerwin,* 996 F.2d 552, 559 (2nd Cir.1993), and the House of Representatives Conference Report. He referred to *In re Edge,* 122 B.R. 219 (D.Vt. 1990), a Chapter 13 case, as holding that the phrase "All payments received by such individual under plans refers to amounts to be paid to creditors." The District Court in *Edge* stated, "We find as a matter of law that funds paid to a standing trustee for purposes of paying the standing trustee's percentage fee are not payments under a Chapter 13 repayment plan. Thus, they are not subject to the standing trustee's percentage fee." 122 B.R. at 221.

Consequently, the Bankruptcy Court in *Wallace I* denied the United States Trustee's Motion to Compel Debtors to Pay Appropriate Fees. In *McAnally,* based upon the reasoning in the Memorandum Opinion and Order of *Wallace I,* the Court overruled the United States Trustee's Objection to Debtors' Amended Plan of Reorganization. For the same reason and on the same basis, the Bankruptcy Court overruled the United States Trustee's Objection to the Second Amended Chapter 12 Plan in *Wallace II* and approved the calculation of the trustee's fee set forth in the plan and the fee percentage to be included in the Debtors' Third Amended Chapter 12 Plan.

### The Appeal

The United States Trustee, Appellant, argues that the conclusion of the Bankruptcy Court that a standing trustee's percentage fee is calculated according to the disbursements made by the trustee is incorrect as a matter of law. He asserts that the Bankruptcy Court failed to give effect to the plain meaning of the section in controversy, 28 U.S.C. § 586(e). The UST states that the Bankruptcy Court erred because it construed § 586(e)(1) in light of § 586(e)(2) and concluded that § 586(e)(1) refers solely to payments made by the trustee to the creditors and that § 586(e)(2) describes the source of

the fee. The UST argues that the Court should have given "effect to the plain meaning of the statute's mandate that the percentage fee is calculated on the basis of 'all payments received' by the standing trustee." (Brief of UST, p. 8).

It appears to this Court that the United States Trustee is interpreting § 586(e)(2) in light of its construction of § 586(e)(1), *i.e.*, interpreting "all payments received by [the trustee] under plans" as meaning all funds received by the trustee (including the trustee's percentage fee) and that the fee "not to exceed 10%" provided by § 586(e)(1) is to be taken, consequently, from all funds turned over to the trustee by the debtor.

The Court of Appeals for the Eighth Circuit, in *In re Wagner*, 36 F.3d 723, 727 (8th Cir.1994), holds that in determining the meaning of § 586, § 586(e)(1)(B)(ii) and § 586(e)(2) are to be read together. The Bankruptcy Court in its decision, the Appellant United States Trustee in its Brief and the Appellee Debtors in their Brief, all read the two subsections of § 586 in conjunction with each other. However, the Eighth Circuit appears to favor the interpretation of the Bankruptcy Court and the debtors. It states, "However, § 586(e)(1)(B)(ii) only establishes the fee structure for Chapter 12 standing trustees. It is § 586(e)(2) that directs when trustees' fees are owing." *Id.* This is similar to the interpretation of the Bankruptcy Court that § 586(e)(1) refers to the method of calculating under § 586(e)(1), *i.e.* 10%, but that § 586(e)(2) establishes the source of the fee or, as the *Wagner* case states, "when trustee's fees are owing." Both Appellant and Appellee argue that the statute is unambiguous, the UST charging that the Bankruptcy Court failed to give effect to the "plain meaning" of the statute and the appellees maintaining that the Bankruptcy Court "gave plain meaning to the language and effect of 28 U.S.C. § 586(e)."

The United States Trustee urges that three errors in the Bankruptcy Court's reasoning regarding the interpretation of § 586(e)(1) are apparent. He states that first, Congress could have limited the calculation of a percentage fee to only money disbursed by the standing trustee if it intended to do so as it specifically did in 11 U.S.C. § 326(a), which applies to Chapters 7 and 11 trustees. Secondly, the Bankruptcy Court has read § 586(e) to limit the computation of the percentage fee to disbursements only and this is unduly narrow and incorrect, whereas the Bankruptcy Code uses the phrase "payment under the plan" to include both payments by debtors and disbursements by trustees. (Appellant's Brief at 10). Finally, the UST urges § 586(e)(2) can only be harmonized with § 1226 of the Bankruptcy Code if it is read to require that the percentage fee be calculated according to all payments received by the standing trustee (again, understanding "all payments" to mean all funds transferred by the debtor to the trustee).

In response to the three allegations by the UST of error on the part of the Bankruptcy Court, the debtors argue that first, Congress did limit the trustee's compensation to a percentage of the payments made under the plan, in that under § 586(e)(1) it limited the calculation so that the percentage fee would not exceed 10% of the payments made and then in § 586(e)(2) provided the source for the funds upon which the percentage fee would be levied. As noted above, this interpretation appears to be in accordance with the Eighth Circuit's understanding of the relationship between § 586(e)(1)(B)(ii) and § 586(e)(2) as construed in *Wagner.*

With reference to the appellant's second attribution of error on the part of the Bankruptcy Court that the phrase "payment under the plan" includes both payments by debtors and disbursements by trustees, the debtors point to the interpretation of the Bankruptcy Court that the trustee acts as a conduit between a debtor's payments under the plan and the creditors who will eventually be paid under the plan and that it is only the channeling of payments and the services performed by a trustee that should generate the payment of a fee. The debtors also allude to the fact that under the UST's interpretation, the trustee would be receiving a fee for paying himself a fee, a subject this Court will refer to later in this Memorandum.

█ The UST is interpreting "payments made under the plan" to include all funds transferred from the debtor to the trustee,

whereas this Court feels the proper interpretation of "payments made under the plan" is the usual meaning of "payment" when used in the context of debtor and creditor, which is basically the context of bankruptcy proceedings. "Payments" in this context refer to amounts paid to creditors.

In the decision *In re Edge*, 122 B.R. 219 (D.Vt.1990), the District Court for the District of Vermont had this question before it. The appellee in that case interpreted the phrase "all payments received by such individual under plans" in § 586(e)(2) to mean that "All funds transferred by the debtor to the standing trustee, *i.e.* all funds received by the standing trustee, are subject to the percentage fee." The Vermont District Court pointed to the history of § 586(e)(2). Prior to 1986, the phrase read "all payments under plans." The 1986 amendment simply added the words "received by such individual." The *Edge* court interpreted the amendment in the following way:

The primary impetus behind amending the language in 28 U.S.C. § 586(e)(2) appears to have been a desire to clarify against what funds a standing trustee is entitled to assess his percentage fee. The prior language suggested the standing trustee could assess his percentage fee against payments made directly by the debtor to a creditor under a repayment plan even though the standing trustee performed no service with regard to those payments. This interpretation was possible because 28 U.S.C. § 586(e)(2) directed that standing trustees could assess their percentage fees against "all payments under plans." Since the direct payments were made under a repayment plan, the standing trustee could assess his fee against them.

The 1986 amendment limited the standing trustee's assessment to "all payments received by such individual [the standing trustee] under plans." A majority of the courts confronting the issue have interpreted this amendment to mean that the standing trustee cannot assess his fee against payments made directly by the debtor to a creditor because he does not "receive" them. [Citations omitted].

While funds the standing trustee does not receive are not subject to the percentage fee, it does not necessarily follow that all funds he receives are subject to the fee as appellee contends. The statutory language used both before and after the 1986 amendment was addressed to payments "under plans." We find as a matter of law that funds paid to a standing trustee for purposes of paying the standing trustee's percentage fee are not payments under a Chapter 13 repayment plan. Thus, they are not subject to the standing trustee's percentage fee.

Additionally, the UST characterizes the Bankruptcy Court's interpretation of § 586(e) as erroneous, stating "Finally, § 586(e)(2) can only be harmonized with Section 1226 of the Bankruptcy Code, if it is read to require the percentage fee to be calculated according to all payments received by the standing trustee." The UST states that "Section 1226(a) provides that a trustee shall retain all payments received prior to confirmation. It further provides that where a plan is not confirmed, a standing trustee shall return any such payments after deducting his percentage fee." (Appellant's Brief at 10–11). The UST argues that in such a circumstance, because no plan would have been confirmed and there would be no way of calculating disbursements, the standing trustee would necessarily take his percentage fee from all monies received. The UST argues that because it is unlikely that Congress would have provided greater compensation for a standing trustee in an unconfirmed case than in a confirmed one, it must have meant that in a confirmed case the trustee's fee should be based upon all monies received.

However, § 1226 does not say "payments received" by the trustee shall be retained until confirmation or denial of confirmation. Section 1226(a) states, "Payments *and funds* received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan." (emphasis supplied). The UST is interpreting payments as all monies paid to the trustee. Section 1226, when it uses the additional words "and funds", indicates that there are monies turned over to the trustee other than "pay-

ments." This Court interprets "and funds" to include the amount delivered to the trustee as the trustee's fee. Again, under this Court's reading, the word "payment" has the ordinary meaning of payment in the creditor-debtor situation. Section 1226(c) continues, "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." To this Court's understanding, that is what the word "payment" means, "payments to creditors."

The *Edge* case, which actually involved a Chapter 13 bankruptcy, found that § 1326, which has the same wording as § 1226, supports the Bankruptcy Court's finding in the instant cases that the trustee's fee is only to be assessed on disbursements to creditors:

> 11 U.S.C. § 1326, governing Chapter 13 payments, further suggests that only payments which are intended to be disbursed to creditors pursuant to a repayment plan are payments made "under" that plan. 11 U.S.C. § 1326(a)(2) directs that "[a] payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan." 11 U.S.C. § 1326(b)(2) expressly *222 distinguishes between payments under a plan and the payment of a standing trustee's percentage fee: "Before or at the time of each payment to creditors under the plan, there shall be paid . . . the percentage fee fixed for such standing trustee. . . ."

*In re Edge*, at 221–222.

The editors of *Collier on Bankruptcy* do not appear to agree with the UST's contention that the standing trustee is entitled to receive a fee of 10% assessed on the amount paid by the debtors as the trustee's fee. They state:

> The Attorney General is required to fix a percentage fee, which in chapter 13 cases is not to exceed ten percent, "based on such maximum annual compensation and the actual necessary expenses incurred by such individual as standing trustee." In chapter 12 cases, the fee is not to exceed ten percent of the first $450,000 paid under

the plan, and three percent of any payments in excess of $450,000. The percentage fee is intended to cover the maximum salary and actual necessary expenses of the standing trustee. The Attorney General will have to set the percentage fee based on the standing trustee's salary and estimated expenses. The percentage fee charged to each estate will depend on factors such as a projection of the number of cases that will be filed in the ensuing year and the total amount that will be paid out to creditors under confirmed plans. *The percentage fee is to be computed on and payable out of the payments actually made by or for a debtor under the plan and may not exceed ten percent of such payments.* (emphasis supplied)

*Collier on Bankruptcy* ¶ 6.11 (15th ed.1995).

■ Appellant UST argues in his next point that even if ambiguity exists, the Attorney General's reasonable construction of § 586(e) must be upheld. It is the Attorney General in the Handbook for Chapter 12 Standing Trustees who has interpreted § 586(e) in such a way that the standing trustee would charge a fee on the amount paid as his fee. The Bankruptcy Court, in the decisions appealed from in this matter, had dealt with this argument and had found that under *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), reference to the Attorney General's interpretation is unnecessary and, in fact, impermissible because the statute is not ambiguous and because the interpretation of the Attorney General is impermissible in that it allows a fee in excess of 10%, the limit under § 586(e)(1), and instead exacts a fee of 11.11%. This Court agrees with the reasoning of the Bankruptcy Court.

Further, the parties all agree that § 586(e) is not ambiguous.

In his argument, the UST, among other cases, cites *In re BDT Farms, Inc.,* 21 F.3d 1019 (10th Cir.1994). The Tenth Circuit, in the *BDT Farms* case, found that § 586(e) is ambiguous and deferred to the interpretation of the Attorney General. The Court of Appeals found that "Whether Congress intend-

ed to allow the standing trustee to, in effect, collect a fee on his or her fee, or intended to limit the trustee's fee to a percentage of disbursements, is not clear from the statutory language, the largest statutory context, or the legislative history." 21 F.3d at 1023. This approach has met with criticism. *In re Turner*, 168 B.R. 882, 886 (Bankr.W.D.Tex. 1994).

█ As mentioned earlier, all parties in this appeal have stated that § 586(e) is not ambiguous. In the case of *In re Wagner, supra*, the Court of Appeals for the Eighth Circuit rejected the argument of the trustee who relied on the Ninth Circuit case of *Fulkrod v. Savage*, 973 F.2d 801 (9th Cir.1992). The Eighth Circuit distinguished that case, finding that the conclusion reached by the Ninth Circuit "was not based upon a close textual analysis of the Chapter 12 statutes but upon policy grounds." 36 F.2d at 726. The Court continued "We believe, however, that Congress's intent is best evidenced by the language of the laws Congress enacts, and we find nothing in the language of the code to support the *Fulkrod* Court's reasoning." 36 F.3d at 726–727. The Court proceeded to an analysis of § 586, stating "We, again, turn to the language of the governing statute." *Id.* In a context different from the present one, namely, whether a trustee's fee must be assessed on payments made directly by the debtor and not through the trustee under Chapter 12 plans (which specifically precluded payment of trustee's fees to the extent that a trustee was not involved), the Court held that such plans do not conflict with the Bankruptcy Code, are valid and that fees need not be charged. In reaching its decision, the Court stated, "We conclude that § 586(e)(2) means what it says...." In the same way, this Court finds that § 586(e)(1) means what it says and that a standing trustee may not charge a fee in excess of 10% as would be the case if the trustee were permitted to charge a fee on his fee, *i.e.* 11.11%.

There are historical and policy considerations which militate against the UST's interpretation of § 586(e). As the Court of Appeals for the Eighth Circuit stated in *Stahn v. Haeckel*, 920 F.2d 555, 557 (8th Cir.1990), "Congress did state that Chapter 12 was 'designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land.' 132 Cong.Rec. 28,144 (1986) (overview of the family farm subtitle of the conference report)."

The interpretation of the United States Trustee, that he should receive a fee for his fee, seems to run counter to the intention of Congress to give family farmers a fighting chance to reorganize their debts as stated above in *Stahn v. Haeckel*. Under the UST's interpretation, the standing trustee receives a fee but performs no service. A farmer attempting to pay off his debts might find it difficult to understand why he should pay the trustee a fee when the trustee has done nothing to earn the fee.

As stated earlier in the statutory and regulatory background, Congress has taken from the courts the authority to set the compensation for the standing trustee in a Chapter 12 bankruptcy. The House Report accompanying the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 stated Congress's reason for its action. The report stated, "The handling of both administrative and judicial functions by the bankruptcy courts had eroded the public confidence in the bankruptcy system.... This awkward relationship between trustees and judges created an improper appearance of favoritism, cronyism, and bias, and generated great disrespect for the bankruptcy system." H.R.Rep. No. 554, 99th Cong., 1st Sess. 1, 18–22 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5229–34.

The United States Trustee is under the jurisdiction of the Department of Justice. The Attorney General, the head of the Department of Justice, has interpreted the statute to allow the trustee to obtain a fee for no services. One wonders if this might not create the appearance of favoritism and cronyism that prompted Congress to remove the ability to set the compensation for standing trustees from the courts in 1986.

In *Wagner, supra* at 726, the Eighth Circuit recognized that trustee's fees are amounts to be earned by the efforts of the trustee when it said, "Trustee's fees are not 'debts provided for by the plan,' but are fees

levied for services provided in administering the plan."

In the case of *In re Erickson Partnership*, 83 B.R. 725 (D.S.D.1988), the District Court for the District of South Dakota, found that debtors could make direct payments to creditors as provided in their plans. The judge stated that he was aware that the ruling would result in the reduction of fees collected by the Chapter 12 standing trustees. The Court continued:

> I note, however, that this reduction in fees corresponds to a reduction in work. Chapter 12's trustee fee scheme contemplates compensating trustees only for services performed. See 28 U.S.C. § 586(b) (standing trustees should only be appointed "if the number of cases ... so warrants.") This decision is entirely consistent with that scheme. This decision recognizes that the language of Chapter 12 authorizes debtors to undertake some of the standing trustee's duties themselves, thereby saving the fees standing trustees would be entitled to if the trustees had perform[ed] the work. This was Congress's intent, as evidenced by the language of the provisions analysed above. If giving effect to this intent will undermine the funding of the trustee system, as the trustees suggest, a remedy must be sought in Congress, not the courts.

Upon de novo review of the Bankruptcy Court's legal conclusion that the proper calculation of a Chapter 12 Trustee's fee is based on a percentage of the payments made by the Chapter 12 Trustee to the creditors, this Court finds no error. Therefore, the final Orders of the Bankruptcy Court entered in each of the captioned cases and appealed from will be affirmed in a Judgment entered separately.

**IT IS HEREBY ORDERED** that Joel Pelofsky be substituted as United States Trustee for John R. Stonitsch in accordance with the Memorandum to Clerk filed by the United States Trustee and pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.