# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3035
No. 98-3036

_____

Hugh Wilson Haden; Karen Sue Haden;     *
Richard D. Hughes; Edith May Hughes;     *
Jerry D. Clay,                           *
                                         *
        Debtors-Appellees,               *
                                         *   Appeal from the United States
    v.                                   *   District Court for the
                                         *   Eastern District of Missouri
Joel Pelofsky, U.S. Trustee; Fredrich J. *
Cruse, Standing Trustee,                 *
                                         *
        Appellants.                      *

_____

Submitted:  April 23, 1999

Filed:  April 12, 2000

_____

Before McMILLIAN, MURPHY, and MONTGOMERY,[1] Circuit Judges.

_____

McMILLIAN, Circuit Judge.

    Joel Pelofsky, United States Trustee ("UST"), and Fredrich J. Cruse, Standing
Trustee ("standing trustee") (collectively "trustees"), appeal from a final order entered

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the
District of Minnesota, sitting by designation.

in the United States District Court[2] for the Eastern District of Missouri affirming the bankruptcy court's[3] confirmation of three Chapter 12 bankruptcy plans over the trustees' objections. See Cruse v. Haden (*In re* Haden), No. 2:96CV00092 ERW (E.D. Mo. June 2, 1998) (hereinafter "Dist. Ct. Order"), aff'g Nos. 94-20111-293/94-20178-293/93-20183-293 (Bankr. E.D. Mo. Oct. 3, 1996) (hereinafter "Bankr. Ct. Order"). For reversal, the trustees argue that the district court below erred in reading *In re* Wagner, 36 F.3d 723 (8th Cir. 1994) (Wagner), to mandate confirmation of Chapter 12 plans in which the debtors propose to pay certain creditors directly, without the oversight of the Chapter 12 trustee and without payment of trustee's fees. For the reasons discussed below, we affirm the district court order.

### Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. § 158(a). Jurisdiction in this court is proper under 28 U.S.C. § 158(d). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

### Background

The three sets of debtors in the instant case -- Hugh Wilson and Karen Sue Haden (together "the Hadens"), Richard D. and Edith May Hughes (together "the Hugheses"), and Jerry D. Clay (collectively "debtors") -- are family farmers in Missouri. Separately and at different times during 1994 and 1995, the debtors

---

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[3]The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

petitioned for Chapter 12 reorganization and protection.[4]  See Bankr. Ct. Order at 1-3. Each family's Chapter 12 plan contained proposed language permitting the debtors to pay some of their creditors directly, rather than through the intermediary standing trustee.[5]  No creditors objected to these direct payments by the debtors.  See id. at 12 n.4.  With respect to such direct payments, the plans also purported to exclude trustee's fees.  See id. at 2-3.

The bankruptcy court confirmed each of the plans, subject only to its subsequent ruling on the trustees' objections as to the direct payments.  See id.  After the parties consolidated their arguments and submitted briefs on the direct payment issue, the court entered an order overruling all but one of the trustees' objections.  Based on Wagner[6],

---

[4]Under Chapter 12, a debtor typically proposes a financial reorganization plan to reschedule debt payments over a three-year post-petition period.  See 11 U.S.C. § 1222(c) (permitting repayment plans of up to five years upon court approval and showing for cause).  The chapter's principal benefit is that families may retain their farms while reorganizing.  See id. §§ 1203, 1204.

[5]The UST acts as a "bankruptcy watch-dog" and is authorized to raise "any issue in any case or proceeding under [the Bankruptcy Code]."  11 U.S.C. § 307. Specifically, the UST monitors and files comments upon plans submitted for confirmation by Chapter 12 debtors.  See id. § 1224; 28 U.S.C. § 586(a)(3)(C).  "If the number of cases under chapter 12 . . . commenced in a particular region so warrants," the regional UST may appoint a "standing trustee."  28 U.S.C. § 586(b).  The UST then supervises the standing trustee in the performance of his or her duties.  See id.

[6]In re Wagner, 36 F.3d 723 (8th Cir. 1994) (Wagner), involved four Chapter 12 plans calling for direct payments of impaired secured creditors by the debtors and for no payment of trustee's fees with respect to these transactions. (An "impaired" secured creditor is one whose legal, equitable, or contractual rights have been diluted by the bankruptcy plan.  See id. at 725 n.3.)  Soon after the bankruptcy court had confirmed the plans and the debtors had initiated payments, the trustee moved to dismiss the bankruptcy actions based on the failure to pay trustee's fees for the debtors' direct payments.  The bankruptcy court then consolidated the cases and granted the trustee's motions to dismiss.  Upon appeal, the district court reversed.  The Eighth Circuit

the bankruptcy court reasoned that Chapter 12 plans containing provisions for direct payments to a debtor's impaired secured creditors were confirmable over the trustees' objections. See id. at 10. Moreover, because "the financial impact of allowing direct payments on the stability of the Chapter 12 program does not appear to be a deciding factor in allowing the Debtors to pay their creditors directly," the court determined that it could not "deny[] confirmation of a Chapter 12 plan that provides for direct payments to impaired secured creditors." Id. at 11. Similarly, the bankruptcy court rejected the trustees' objections to the direct surrender of secured collateral as well as the direct payment of unimpaired secured claims and administrative expenses. See id. at 12-15. However, the court did order Clay to direct child support arrearage payments through the trustee. See id. at 15.

The district court affirmed, holding that such direct payment plans were permitted under Wagner. See Dist. Ct. Order at 3. The debtors have since made payments in accordance with the confirmed plans. In fact, discharges were entered with respect to the Hadens and the Hugheses in August 1997 and June 1998, respectively; no discharge has been entered for Clay, although he has apparently finished making all payments under the plan. See Brief for Appellant UST at 12 n.4; Supp. Brief for Appellant UST at 5; Supp. Brief for Appellees at 5. Pending appeal, the debtors have held in escrow trustee's fees on all disputed payments, equal to the amount required if the trustees' objections were sustained. See Brief for Appellant Standing Trustee at vi. These appeals followed.

---

affirmed the decision of the district court, holding that "the debtors' plans permit them to make direct payments to their impaired secured creditors, and that these provisions of the plans are not in conflict with the bankruptcy code." Id. at 727. Based on the language of Chapter 12, the court concluded that the debtors owed no fees to the trustee for the debtors' direct payments to impaired secured creditors. See id. at 728.

## Discussion

Mootness

Before considering the merits of the trustees' separate appeals, we must decide whether we have jurisdiction. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998). Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies. See Missouri *ex rel.* Nixon v. Craig, 163 F.3d 482, 484 (8th Cir. 1998) (Craig). "It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues." South Dakota v. Hazen, 914 F.2d 147, 150 (8th Cir. 1990). When, during the course of litigation, the issues presented in a case "lose their life because of the passage of time or a change in circumstances . . . . and a federal court can no longer grant effective relief," the case is considered moot. Beck v. Missouri State High Sch. Activities Ass'n, 18 F.3d 604, 605 (8th Cir. 1994). "[I]f this case is indeed moot, we must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." Craig, 163 F.3d at 484. With these principles in mind, we examine whether the trustees' separate appeals remain alive, given that all three sets of debtors have completed payments under their respective plans and that the Hadens and the Hugheses have been discharged from bankruptcy proceedings.

Debtors claim that the appeals of both the UST and the standing trustee are moot, in light of the execution of all plan payments and the discharge of two sets of debtors. Debtors contend that, because all plan payments have been made and therefore no administrative work remains, the standing trustee cannot be entitled to any fees for the debtors' direct payments to creditors. See Supp. Brief of Appellees at 6-7. Accordingly, debtors argue that the trustee's fees issue is moot.

The UST now asserts effective relief may still be available with respect to each of the three plans and thus his appeal is not moot.[7]  See Supp. Brief of Appellant UST at 9, 13 n.2.  Such effective relief could include the bankruptcy court either (1) disgorging certain payments from creditors and rerouting payments through the standing trustee or (2) ordering that the standing trustee collect some portion of the fees being held in escrow.  See id. at 9, 11.  Although the UST concedes that the former outcome may conflict with Eighth Circuit precedent, see id. at 10, the UST asserts that the latter falls within the bankruptcy court's "considerable equitable discretion in fashioning an appropriate bankruptcy remedy" pursuant to 11 U.S.C. § 105.  Id. at 11 (quoting *In re* Reeves, 65 F.3d 670, 674 (8th Cir. 1995)).

The standing trustee similarly argues that his appeal is not moot.  In addition to contending that the cases below are "capable of repetition, but evading review," and thus not moot, Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911), the standing trustee asserts that a discharge order cannot moot an issue collateral to the bankruptcy, such as the propriety of trustee's fees for certain payments to creditors.  See Supp. Brief of Appellant Standing Trustee at 4 (citing Wagner, 36 F.3d at 726).

We hold that, under Wagner, neither the UST's nor the standing trustee's appeal is moot.  In Wagner, the debtors had been discharged from bankruptcy proceedings.  The trustee sought neither a stay nor an appeal of the discharge.  This court rejected the debtors' assertion that the trustee's appeal was moot.  This court reasoned:

---

[7]At oral argument, the UST contended that his own appeal had been rendered moot by the discharges and completions of all plan payments.  At the same time, neither the UST nor the standing trustee believed that the standing trustee's separate appeal was moot.  Debtors did not comment on this issue.  Upon this court's own motion, the parties were directed to file supplemental briefs addressing the mootness question.  See Haden v. Pelofsky, Nos. 98-3035/98-3036 (8th Cir. Apr. 23, 1999) (order directing parties to file supplemental briefs on mootness issue).

> A discharge under the bankruptcy code discharges "debts provided for by the plan." Trustee's fees are not "debts provided for by the plan," but are fees levied for services provided in administering the plan. A claim against the debtors for trustee's fees is collateral to the bankruptcy action and the obligation to pay such fees is not relieved by a discharge from the bankruptcy proceedings. If we find that [the trustee's] arguments have merit we may grant effective relief, and [his] appeal thus is not moot.

Wagner, 36 F.3d at 726 (citation omitted). Similarly, the discharges and completion of payments in the bankruptcy plans at issue here cannot render moot the trustees' claims with respect to fees. Because effective relief would be available if we find merit to the trustees' claims for fees, the trustees' separate appeals are not moot.

Direct Payments and Trustee's Fees

As the second reviewing court, our standards are the same as those of the district court; we review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. See *In re* Mathiason, 16 F.3d 234, 235 (8th Cir. 1994).

For reversal, the UST contends that the courts below misread Wagner to bar bankruptcy courts "from ever considering the impact that removing trustee oversight from a Chapter 12 debtor's payment of impaired secured creditors may have on the feasibility of the debtor's plan." Brief for Appellant UST at 13. According to the UST, the bankruptcy court incorrectly concluded that Wagner created an "absolute right" for debtors to make such direct payments, reasoning that "[t]he language used by the Court in Wagner prevents this Court from denying confirmation of a Chapter 12 plan that provides for direct payments to impaired secured creditors." Brief for Appellant UST at 10-11 (quoting Bankr. Ct. Order at 11). Similarly, the district court viewed the question presented as "whether [Wagner] requires confirmation of a Chapter 12 plan that provides for direct payments on impaired secured claims by a debtor to the creditors, thereby avoiding payment of the standing trustee's statutory fee." Dist. Ct.

Order at 1.  The UST argues that <u>Wagner</u> did not address this issue of whether the code creates a "blanket entitlement" to make direct payments, irrespective of the effect that lack of trustee oversight might have on plan feasibility; instead, the court in <u>Wagner</u> merely concluded that the bankruptcy code does not necessarily prohibit direct payments by Chapter 12 debtors.  The UST claims that the debtors in the instant case admitted as much in their memorandum of law to the bankruptcy court by observing that "<u>Wagner</u> does not address the issue of <u>when</u> a debtor may provide for direct payments or what circumstances warrant their approval by a court."  Joint Appendix, vol. II, at 488 (Debtors' Memorandum Regarding Direct Payments in Chapter 12 and Trustee's Fees).

The UST argues that the lower courts' misconstruction of <u>Wagner</u> places an "unprecedented constraint" on the bankruptcy courts and runs counter to both precedent and policy considerations underlying the Chapter 12 framework.  The UST claims that the rule announced by the courts below "unjustifiably handicaps bankruptcy courts' ability to satisfy their statutory mandate to confirm only feasible Chapter 12 plans."  Brief for Appellant UST at 28.  Pursuant to this obligation, the courts must assure themselves that "the debtor will be able to make all payments under the plan and to comply with the plan."  11 U.S.C. § 1225(a)(6).  The UST argues that any rule requiring confirmation of direct payment plans would essentially trump judicial evaluation under § 1225 of potential threats to plan feasibility.[8]  Moreover, the UST

_____

[8]The UST also foresees a range of potential negative consequences if trustee oversight is removed with respect to certain direct payments.  For one, a debtor who lacks the business acumen necessary to ensure all payments are made correctly may be unable to coordinate direct payments to creditors.  Moreover, unsophisticated creditors with few resources and little understanding of the bankruptcy process may be in poor position to ensure that debtors are paying in line with their Chapter 12 plans.  See <u>In re</u> Pianowski, 92 B.R. 225, 233-34 (Bankr. W.D. Mich. 1988) (<u>Pianowski</u>).  Additionally, the debtor's default on payments to one creditor may impair the interests of all other creditors (as well as the debtor), if the unpaid creditor lays claim to the

contends that the lower courts' interpretation of <u>Wagner</u> conflicts with the well-accepted line of cases establishing a discretionary test for courts' review of plans including direct payments. <u>See, e.g.</u>, <u>*In re* Pianowski</u>, 92 B.R. 225, 233-34 (Bankr. W.D. Mich. 1988) (<u>Pianowski</u>) (setting forth a non-exclusive thirteen factor test for evaluating plan feasibility under 11 U.S.C. § 1225). Accordingly, the UST urges this court to reject the lower courts' overly broad reading of <u>Wagner</u> and to instruct lower courts to evaluate proposed direct payments in light of their impact on plan feasibility.

The standing trustee contends that, because the procedural background of <u>Wagner</u> was materially different from that of the instant case, the courts below erred by applying the <u>Wagner</u> standard to the adjudication of the trustees' objections. Specifically, the standing trustee notes that he objected to the debtors' plans <u>prior</u> to judicial confirmation, whereas the <u>Wagner</u> standing trustee failed to make such a timely objection. As a result, the standing trustee argues, in <u>Wagner</u>, this court only evaluated the potential conflict between the bankruptcy code and the already confirmed plan, and not the bankruptcy court's decision to confirm a plan with direct payments despite the objections of trustees or creditors. <u>See</u> Brief for Standing Trustee at 2-3 (citing Michaela M. White, Direct Payment Plans, 29 Creighton L. Rev. 583, 609-10 (1996) ("[T]he Eighth Circuit's statement [in <u>Wagner</u>] that the Code does not prohibit direct payment plans cannot be properly understood as depriving the bankruptcy court of discretion in the confirmation of such plans for the rather basic reason that this was not even the question on appeal.")). Alternatively, the standing trustee requests *en banc* reconsideration of <u>Wagner</u>.

---

debtor's property without regard for others' financial interests. <u>See *In re* Logemann</u>, 88 B.R. 938, 941-42 (Bankr. S.D. Iowa 1988). Finally, direct payments may undermine the trustee's ability to receive adequate compensation for his or her work. <u>See</u> <u>Pianowski</u>, 92 B.R. at 234 & n.16.

Upon careful review, we hold that the courts below did not err in their interpretation and application of <u>Wagner</u>. First, we do not read <u>Wagner</u>'s textual analysis of the Chapter 12 statutes as limited to its own particular procedural context. In examining the bankruptcy code (prior to any consideration of the plans themselves or any attendant trustee objections), this court recognized in <u>Wagner</u> that the code "does not forbid plan provisions allowing direct payments by the debtor to impaired secured creditors." 36 F.3d at 726. In fact, as this court noted, the language of the code expressly anticipates that such payments may be made. <u>See</u> <u>id.</u> (noting that 11 U.S.C. § 1226(c) requires the trustee to make payments to creditors under the plan "*[e]xcept as otherwise provided in the plan or in the order confirming the plan*" (emphasis added), while <u>id.</u> § 1225(a)(5)(B)(ii) addresses the treatment of secured claims by referring to "*property to be distributed by* the trustee or *the debtor under the plan.*" (emphasis added)). <u>Accord.</u> *In re* <u>Beard</u>, 45 F.3d 113, 119 (6th Cir. 1995) (<u>Beard</u>) (comparing Chapter 12 code provisions and concluding that "Congress had constructed a scheme that envisioned that debtors would at times be able to pay their debts directly to their creditors, allowing them to bypass the trustee."). We find nothing in <u>Wagner</u> to indicate that its statutory analysis only applied to Chapter 12 plans matching <u>Wagner</u>'s procedural posture, where the trustee apparently had not objected to the direct payment provisions prior to confirmation. Accordingly, we are not convinced by the standing trustee's arguments that <u>Wagner</u> is procedurally distinguishable from the instant case.

Next, we do not believe that the courts below misinterpreted <u>Wagner</u>. Although both the bankruptcy court and the district court used somewhat imprecise language in defining <u>Wagner</u>'s scope, at no point did either of the lower courts state that <u>Wagner</u> established an "absolute right" for Chapter 12 debtors to make direct payments to impaired secured creditors. <u>See</u> Bankr. Ct. Order at 11 ("The language used by the Court in <u>Wagner</u> prevents this Court from denying confirmation of a Chapter 12 plan that provides for direct payments to impaired secured creditors."); Dist. Ct. Order at 1 ("The main issue on appeal is whether [<u>Wagner</u>] requires confirmation of a Chapter

12 plan that provides for direct payments on impaired secured claims by a debtor to the creditors, thereby avoiding payment of the standing trustee's statutory fees."). We read the lower courts' decisions to hold that such direct payment plans may be confirmed under Wagner, provided all the requirements of 11 U.S.C. § 1225 are met, including a plan feasibility assessment. See id. § 1225(a)(6).

The UST incorrectly claims that the bankruptcy court failed to make an adequate feasibility determination in this case. The bankruptcy court clearly indicated that the plans were feasible and that the direct payments at issue were permissible so long as they did not interfere with feasibility. Regarding the trustees' objections to the direct payments given the debtors' avoidance of trustee's fees, the court admitted the possible negative impact on the Chapter 12 administrative apparatus if "debtors are given free reign to circumvent the trustee's fees." Id. at 11. However, based on Wagner 's rejection of similar reasoning, see 36 F.3d at 726 (finding no support in the bankruptcy code for the reasoning that "Congress could not have intended debtors to make direct payments to creditors" just because "the trustee will receive nothing" if such payments are made), the bankruptcy court concluded that "the financial impact of allowing direct payments on the stability of the Chapter 12 program does not appear to be a deciding factor in allowing the Debtors to pay their creditors directly." Bankr. Ct. Order at 11; see also Beard, 45 F.3d at 118-120 (permitting Chapter 12 debtor to pay directly the secured portion of undersecured claims and rejecting trustee's argument that lack of trustee remuneration would undermine Chapter 12 administrative scheme and Congressional intent). The bankruptcy court indirectly addressed feasibility by noting that, if the secured creditors in the instant case had objected to the direct payments, "the results in the present cases may have been different." Bankr. Ct. Order at 12 n.4. Later in its opinion, the bankruptcy court expanded upon the impact of removing trustee oversight on direct payments:

> [S]ecured creditors, both impaired and unimpaired, are nearly always
> sophisticated and often represented by experienced counsel. The need for

the trustee to monitor payments made directly to the secured creditors is less significant in assuring the success of a Chapter 12 plan. Thus, if the court is reasonably certain that direct payments to the creditors will not interfere with the statutory duties of the Trustee, nor contribute to the likelihood of the failure of the farmers' efforts to organize or their noncompliance with the confirmed plan, then there is no reason why the court should not approve the Debtors' request to directly pay their administrative and [secured] creditors. However, it is unlikely that the court would ever approve direct payments to unsecured creditors, without the debtor clearly demonstrating the existence of good cause and the creditors' affirmative consent.

Id. at 13-14. While the bankruptcy court did order that child arrearage payments to a particular unsecured creditor be made through the trustee, see id. at 14-15, the court apparently considered the lack of trustee oversight and remuneration for the other direct payments to be of little importance with respect to the feasibility of the Chapter 12 plans. Accordingly, we hold that the lower courts correctly applied Wagner not to mandate confirmation of all direct payment plans, but rather to permit direct payments which comport with feasibility requirements under the bankruptcy code.[9]

## Conclusion

For the reasons stated, we affirm the order of the district court.

---

[9]Neither Wagner nor any other Eighth Circuit case has outlined the possible factors involved in such a Chapter 12 plan feasibility determination. As the UST concedes, we need not resolve that issue here. See Brief for Appellant UST at 28.

-12-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.